**CHRYSLER INSURANCE
CO., Petitioner,**

v.

**GREENSPOINT DODGE OF
HOUSTON, INC.,
Respondent.**

No. 08–0780.

Supreme Court of Texas.

Oct. 30, 2009.

Rehearing Denied Dec. 11, 2009.

J. Stephen Gibson, Lisa Ann Songy, Michael W. Huddleston, Shannon Gracey Ratliff & Miller, L.L.P., Dallas, Kevin F. Risley, Thompson, Coe, Cousins & Irons, L.L.P., Houston, for Chrysler Insurance Co.

William "Andy" Taylor, Amanda Eileen Staine Peterson, Andy Taylor and Associates, P.C., Houston, for Greenspoint Dodge of Houston, Inc.

PER CURIAM.

This case arises out of an insurance coverage dispute, involving liability policies insuring a corporation and its officers, among others. The issue here concerns the corporation's coverage for defamation. The policies excluded coverage for defamatory statements an insured knew to be false, and the insurance company refused coverage on the basis of this exclusion. The court of appeals concluded, however, that this known-falsity exclusion did not apply to the corporation because no corporate officer knew that the defamatory statements, made by other corporate employees, were false when made. The court accordingly affirmed, in part, a judgment awarding damages for the insurer's failure

to defend and indemnify its insured. 265 S.W.3d 52.

A corporation's knowledge, however, is not limited to what its officers know, but may include other employees' knowledge, if those employees are corporate vice-principals. The employees who made the defamatory statements here, although not officers, were found to be corporate vice-principals. They were also found to have knowledge that their statements were false when made. The corporation thus knew, through its vice-principals, that the defamatory remarks were false when made and its knowledge, as a named insured, was sufficient to invoke the known-falsity exclusion. We accordingly disagree with the court of appeals' application of the known-falsity exclusion and conclude that the policy did not provide liability coverage for the underlying defamation claim in this case.

The defamation claim arose from remarks and accusations directed at Noe Martinez, the inventory control manager at Greenspoint Dodge of Houston, Inc. Greenspoint's general manager, comptroller, and used car sales manager defamed and disparaged Martinez, referring to him as a "thieving spic beaner" and a "thieving Mexican," and accusing him of stealing cars and other criminal activity. Martinez was eventually fired and replaced by the general manager's nephew.

Martinez thereafter sued Greenspoint, the three managers, and Greenspoint's chief executive officer, Jack Apple, Jr., alleging defamation and intentional infliction of emotional distress. The dispute was submitted to binding arbitration, which resulted in an award of approximately $1.5 million in compensatory and punitive damages to Martinez. The arbitrators found that the individuals who engaged in the campaign to defame and injure Martinez were Greenspoint vice-principals.[1]

At the time of this occurrence, Greenspoint was a named insured under two liability policies, a Texas Commercial Multi-Peril Policy (Primary Policy) and a Commercial Umbrella Liability Policy (Umbrella Policy), both issued by Chrysler Insurance Co.[2] The Primary Policy contained several different coverages, including the Commercial General Liability Part (CGL Policy) and the Broadened Coverage–Garages Part (Broadened Garage Endorsement). Both the Primary Policy and the Umbrella Policy provided coverage for "personal injury" defined to include "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organizations's goods, products or services." The Primary Policy's liability limit for personal injury was $1 million and the Umbrella Policy's limit was $5 million. Both policies contained an exclusion for personal injury "arising out of oral or written publication if done by or at the direction of the insured with knowledge of its falsity."

---

1. In *Hammerly Oaks, Inc. v. Edwards*, we defined a "vice-principal" as encompassing four classes of corporate agents:
  (a) Corporate officers; (b) those who have authority to employ, direct, and discharge servants of the master; (c) those engaged in the performance of nondelegable or absolute duties of the master; and (d) those to whom a master has confided the management of the whole or a department or division of his business.

958 S.W.2d 387, 391 (Tex.1997) (quoting *Fort Worth Elevators Co. v. Russell*, 70 S.W.2d 397, 406 (Tex.1934) overruled on other grounds by *Wright v. Gifford–Hill & Co.*, 725 S.W.2d 712, 714 (Tex.1987)).

2. Chrysler Insurance Co. was known as DaimlerChrysler Insurance Co. when these policies were issued.

After being notified of Martinez's claims, Chrysler defended its insureds under a reservation of rights. Shortly after the arbitration award, however, Chrysler withdrew its defense and refused Greenspoint's demands for indemnity.

The district court subsequently confirmed the arbitration award against Greenspoint and the other defendants, except for Apple. The court vacated the award against Apple, finding no evidence that he knew about the campaign to defame Martinez. Greenspoint appealed, but abandoned the appeal after settling Martinez's claims for $1.75 million.

Greenspoint and Apple then sued Chrysler for breach of contract and bad faith. The trial court concluded in a summary judgment proceeding that Chrysler breached its duties under the policy by withdrawing its defense and not indemnifying Greenspoint for the settlement. The trial court submitted the remaining fact issues to a jury, which found Greenspoint's settlement with Martinez was reasonable and it was entitled to attorneys' fees and extra-contractual damages. The trial court rendered judgment for Greenspoint on the jury's verdict, and Chrysler appealed. Apple recovered no damages in the judgment and sought no relief on appeal.

The court of appeals affirmed the trial court's judgment, in part, and reversed it, in part. 265 S.W.3d 52. The court affirmed Greenspoint's recovery under the Primary Policy, concluding that it obligated Chrysler to continue its defense and to indemnify Greenspoint, notwithstanding the known-falsity exclusions and the knowledge of Greenspoint's vice-principals. *Id.* at 56, 68, 70. The court of appeals, however, reversed that part of the trial court's judgment awarding damages in excess of the Primary Policy's limits, rendering judgment that Greenspoint take nothing under the Umbrella Policy and its claims for extra-contractual liability under the Insurance Code. *Id.* at 68–70. Both Chrysler and Greenspoint filed petitions for review with this Court.

Chrysler argues that the court of appeals erred in affirming Greenspoint's recovery under the Primary Policy because the known-falsity exclusion expressly eliminated coverage for the defamation committed by Greenspoint's vice-principals. While recognizing that Greenspoint was liable under tort law for the defamatory statements of its vice-principals, the court of appeals nevertheless reasoned that the issue here was not Greenspoint's liability in tort but rather the meaning of the insurance contract, specifically whether "the acts committed by the vice-principals are the very acts of the 'organization,' as that term was used by the parties to the insurance policy." *Id.* at 65. The court then concluded that because the policies did not mention vice-principals but rather defined the organization (Greenspoint) to include only its officers, directors, or shareholders, that only their knowledge, not the vice-principals', could be imputed to the corporation. *Id.* at 66.

The court of appeals gleaned its definition of Greenspoint from the policy's definition of who qualified as an insured. *Id.* at 65–66. The Primary Policy's declarations page named "Greenspoint Dodge, Inc." as an insured.[3] The CGL Policy further identified additional entities who might claim the status of an insured because of their relationship to a named insured. The policy provided in pertinent part:

---

**3.** Two other entities, L & A Leasing and Apple Motor Cars of Houston, are also listed as named insureds.

SECTION II—WHO IS AN INSURED

1.  If you are designated in the Declarations as:

    a.  An individual . . . .

    b.  A partnership or joint venture . . . .

    c.  An organization other than a partnership or joint venture, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

The Broadened Garage Endorsement also named "Greenspoint Dodge, Inc." as an insured, similarly providing under its own "WHO IS AN INSURED" provision that Greenspoint's executive officers, directors, and stockholders are also insureds while acting within the scope of their duties.

Relying on these provisions to define Greenspoint for purposes of the known-falsity exclusion, the court of appeals reasoned:

> Under the terms of the policy, Greenspoint is Apple, the officers, the directors and the shareholders, and it does not include [vice-principals] . . . . Put simply, under tort law Greenspoint is responsible for the actions of certain people in supervisory positions because their actions are determined to be the actions of the corporation, and liability is imposed even though the supervisors are not officers, directors or shareholders of the corporation. But the policy excludes from coverage only a false statement by Greenspoint, as it is defined under the policy, as officers, directors or shareholders of the corporation. We conclude that the terms of the policy itself control the definition of which people make up the corporation, for purposes of the insurance coverage.

265 S.W.3d at 65–66 (emphasis added). The court thus concluded that under the policy "Greenspoint [was] Apple" and knew only as much as Apple, which is to say nothing about defaming Martinez. *Id.* at 65.

■■■ The interpretation of an insurance contract is generally subject to the same rules of construction as other contracts. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Crocker,* 246 S.W.3d 603, 606 (Tex.2008). Contract language that can be given a certain or definite meaning is not ambiguous and is construed as a matter of law. *DeWitt County Elec. Coop., Inc. v. Parks,* 1 S.W.3d 96, 100 (Tex.1999). The primary objective is to determine the parties' intent as reflected in the policy's terms, *Don's Bldg. Supply, Inc. v. One-Beacon Ins. Co.,* 267 S.W.3d 20, 23 (Tex. 2008), and our review of an unambiguous contract, like any other legal question, is de novo. *Heritage Res., Inc. v. Nations-Bank,* 939 S.W.2d 118, 121 (Tex.1996).

■■■ Contrary to the court of appeals' view, nothing in the policy supports the conclusion that "Greenspoint is Apple" for purposes of this insurance. Greenspoint and Apple are separate legal entities, and the definition of "insured" does not alter this fact. Moreover, the insured definition does not purport to define Greenspoint, the named insured, but merely identifies other persons or entities who may qualify as additional insureds under the policy. Jack Apple is such a person because of his status as an officer, director, and shareholder of Greenspoint, but Apple's qualification as an additional insured does not make him Greenspoint or vice versa. In fact, the policy provides that Greenspoint, Apple, and any other insured under the policy are to be considered separately for purposes of coverage.

■ The policy states that coverage applies "separately to each insured who is seeking coverage" or "separately to each insured against whom claim is made or 'suit' is brought." [4] The purpose of these separation-of-insureds clauses is to provide each insured with separate coverage, as if each were separately insured with a distinct policy. *Commercial Std. Ins. Co. v. Am. Gen. Ins. Co.*, 455 S.W.2d 714, 721 (Tex.1970). Under such a provision, intent and knowledge for purposes of coverage are determined from the standpoint of the particular insured, uninfluenced by the knowledge of any additional insured. *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 188–89 (Tex.2002).

■ The court of appeals' view that Greenspoint's knowledge is defined solely by that of another insured, Apple, creates a conflict with the separation-of-insureds clauses. When construing a contract, a court should consider the entire writing, giving effect to all its provisions so that none are rendered meaningless. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex.2006). By conflating the insureds in derogation of the separation-of-insureds clause, the court deprives these clauses of meaning under the erroneous assumption that the policy's definition of "insured" was also meant to define "Greenspoint."

■ The arbitrators found that Greenpoint's general manager, comptroller, and used car sales manager were Greenspoint's vice-principals and that they intentionally and maliciously defamed Martinez "without even the pretense of a belief in the truth of their accusations." "A vice-principal represents the corporation in its corporate capacity, and includes persons who have authority to employ, direct, and discharge servants of the master, and those to whom a master has confided the management of the whole or a department or division of his business." *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex.1999). As vice-principals, their acts are the acts of the corporation itself, and corporate liability in this situation is direct rather than vicarious. *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex.1997).

Under the policy's known-falsity exclusion, coverage for defamation was excluded for statements made or directed by the insured with knowledge of their falsity. The policy expressly named Greenspoint as an insured, and the arbitration proceeding effectively determined that Greenspoint made the defamatory remarks, through its vice-principals, and knew them to be false when made. Accordingly, there is no coverage under the Primary Policy for Greenspoint's defamation, and the court of appeals erred in holding otherwise.

■ Greenspoint also filed a petition for review urging that the court of appeals erred in taking away its award of punitive and extra-contractual damages. "As a general rule there can be no claim for bad faith when an insurer has promptly

4. Both the CGL policy and the garage endorsement contained separation-of-insureds clauses. The CGL policy provides:
   7. Separation of Insureds.
      Except with respect to the limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:
      a. As if each Named Insured were the only Named Insured; and

      b. Separately to each insured against whom claim is made or "suit" is brought.
   The garage endorsement similarly provides that "[e]xcept with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or suit is brought."

denied a claim that is in fact not covered." *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex.1995). Having concluded that Chrysler did not breach the insurance contract, no basis supports these awards. *Progressive County Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex.2005) (per curiam). The court of appeals accordingly did not err in vacating them.

The court of appeals' judgment is affirmed, in part, and reversed, in part, and, without hearing oral argument, TEX. R. APP. P. 59.1, we render judgment that Greenspoint take nothing.

Justice GUZMAN did not participate in the decision.