Opinion issued October 13, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00138-CV

———————————

Advanced Micromagnetics, Inc., Appellant

V.

Torch Energy
Advisors, Inc., Torch E&P Company, Rockport
Resources Capital Corporation, and NM Back Nine Exploration Partners, LLC,
Appellees



 



 

On Appeal from the 113th District Court

Harris County, Texas



Trial Court Case No. 2007-34064

 



 

MEMORANDUM OPINION

Advanced
Micromagnetics, Inc. (“AMI”), appeals from a summary judgment in favor of Torch Energy Advisors, Inc., Torch
E&P Co., Rockport Resources Capital Corp., and NM Back Nine Exploration
Partners, LLC (collectively, “Torch” or the “Torch Defendants”).  We
reverse and remand for further proceedings consistent with this opinion. 

Background

AMI is a consulting
company that uses proprietary geophysical technology to analyze and interpret
high frequency
elements of high resolution, low altitude micromagnetic data for its oil and
gas exploration clients.  According to
AMI, its technology reduces
exploration costs and allows clients to focus upon prospects with increased success
rates and reduced exploration costs.  The
Torch Defendants are affiliated companies that lease, drill for, complete,
produce and sell oil and natural gas in the southwestern region of the United
States, including New Mexico.

In early 2005, Torch’s
representative, John James
Lendrum III,[1] contacted AMI President David
Greenlee regarding potential oil and gas reserves in New Mexico.  At the time, Greenlee was both owner and
officer of AMI, along with James Wolleben and Carl McCutcheon. 


Greenlee met Lendrum, in early March 2005, to
discuss the New Mexico prospect and thereafter sent multiple communications on
AMI’s letterhead to Lendrum discussing and analyzing data
from an aeromagnetic
survey of the New Mexico prospect provided by Lendrum.  Specifically,
Greenlee sent a letter noting that AMI “should be able to significantly add to
this exploration play by facilitating the ability to prioritize the magnetic
structural anomalies defined by [the other] study” and thanked Lendrum for
“remembering AMI.”  

The record reflects
that, the following month, Greenlee submitted a proposal to Lendrum, on his
personal letterhead, to process and analyze the aeromagnetic data.  Torch contends that when it asked about the
change, Greenlee responded that he had the right to provide the requested
analysis in his personal capacity.  The
record reflects that Torch apparently agreed to hire Greenlee to provide his
data analysis services and Greenlee and Torch began to negotiate the terms of
an independent vendor/contractor’s agreement. 
Although early drafts of the agreement named Greenlee as the vendor/contractor,
at Greenlee’s request, this was later changed to Telsus Exploration, Inc.  The final agreement executed on May 26, 2005, between Torch and
Telsus is referred to as the “Torch Energy Contract,”[2]
pursuant to which, upon completion of the contract, Telsus received $50,000,
plus an overriding royalty of 0.5% on any prospect defined and located by
Telsus pursuant to the contract.  AMI
claims that Torch’s use of AMI’s proprietary information and intellectual
property caused Torch to identify thirty-three defined micromagnecitc
prospects, from which Torch had profited already and would profit in the
future. 

On September 13, 2006, AMI, Wolleben, Greenlee, and
McCutcheon executed a Mutual Settlement Agreement and Release Agreement (“Settlement
Agreement”), effective December 31, 2005, which, inter alia, provided for the transfer of Greenlee’s and Wolleben’s
AMI stock to McCutcheon and a mutual release of claims.  It also included a number of representations
by Greenlee and Wolleben regarding AMI’s assets and liabilities, as well as
revenue and compensation that they received after May 2002 related to their AMI
employment.  The Settlement Agreement
also transferred equity interest in various contracts to the individual
shareholders, and included a consulting agreement for Greenlee and Wolleben to
work for AMI on future projects.  Before
the transfer, Greenlee and Wolleben owned slightly more than 50% of AMI.

AMI subsequently filed suit against Torch alleging various
causes of action, including trade secret misappropriation, conversion, quantum
meruit, unjust enrichment, breach of fiduciary duty and usurping corporate
opportunities, conspiracy, and aiding and abetting, arising from Torch’s
alleged misappropriation and conversion of AMI’s proprietary information and
intellectual property in concert with Greenlee, Wolleben, and Telsus.  Notably, AMI did not assert a claim of
ownership with respect to the Torch Energy Contract. Torch answered with a
general denial and raised affirmative defenses of settlement, estoppel, third
party beneficiary, release, waiver, ratification, sanctions, ambiguity,
responsible third party, and agency.  

Torch subsequently filed a traditional motion for summary
judgment arguing that AMI had no claim as a matter of law because it knowingly
relinquished any rights or claims that it may have had with respect to the
Torch Energy Contract when it executed the Settlement Agreement.[3]  According to Torch, the purpose of the
Settlement Agreement was to preserve AMI’s ownership of and use of its technology
with respect to future business and all existing business, excepting those
prospects specifically allocated to Greenlee and Wolleben in the Settlement
Agreement, such as the Torch Energy Contract. 
Citing to section 2(C) of the Settlement Agreement which expressly
excluded the Torch Energy Contract from the definition of “AMI Prospects,”
Torch argues that by doing so, AMI agreed that the rights to the Torch Energy
Contract as well as the propriety information of AMI provided pursuant to the
contract did not belong to AMI, but instead were allocated to Greenlee and
Wolleben. 

According to Torch, that the parties agreed to exclude the
Torch Energy Contract from AMI’s assets is further supported by Wolleben’s and
Greenlee’s representations and warranties
as set forth in sections 5.5 and 5.12 of the Settlement Agreement.  Section 5.5 states that “[e]ach of Greenlee and
Wolleben represent and warrant that the assets listed in Exhibit ‘3,’. . .
lists all assets of AMI.”  The Torch
Energy Contract is not included in Exhibit 3.  The assets do include, however, AMI’s
confidential and propriety information.  In section 5.12, Greenlee and
Wolleben state that they have identified the revenue and compensation received
since May 1, 2002, or are entitled to receive in the future “to the extent such
revenues and compensation arose from, or are related in any way to the
employment of AMI Micromagnetic Technology, AMI Geophysical Data, or AMI
Prospects” in an attached exhibit, and they further represent and warrant that:


there are (1) no undisclosed micromagnetic and/or aeromagnetic
prospects or projects that existed prior to May 1, 2002 that were sold by AMI
and/or transferred by AMI and which AMI is entitled in the future to any
compensation or value therefrom, and (2) there are no undisclosed micromagnetic
and/or aeromagnetic prospects or projects that were identified by Greenlee and
Wolleben and/or AMI between May 1, 2002 and the execution date and (3) none of
the AMI Prospects identified before or after May 1, 2002 and/or consulting
projects identified after May 1, 2002 using AMI Micromagnetic Technology have
been sold by either Greenlee or Wolleben or their affiliates since May 1, 2002.  The
foregoing representation and warranty specifically excludes revenue and
compensation received relating to the one Torch Energy contract covering
1,800,000 acres in Chaves and Roosevelt Counties, New Mexico, dated June 20,
2005.

Torch argues that these clauses evidence that the
Torch Energy Contract was not one of AMI’s assets and that AMI both knowingly
and willingly relinquished any rights or claims it may have had with respect to
the Contract and therefore, AMI has no claims arising therefrom as a matter of
law.  

Torch further contends that AMI has
no claims against it for either  “aiding
and abetting,” or usurpation of corporate opportunities because AMI
relinquished any interest it had in the Torch Energy Contract after services
were provided under the contract by Greenlee and Wolleben, and therefore, AMI
ratified Greenlee’s and Wolleben’s conduct. 
Torch also claims that AMI’s secondary claims of conspiracy and aiding
and abetting require the existence of some wrongful conduct, and since AMI
authorized and ratified Greenlee’s and Wolleben’s conduct, there was no
wrongful conduct, and therefore, no basis for a conspiracy or aiding and
abetting claim.  Torch also argues that it was entitled to
summary judgment because the Settlement Agreement establishes its affirmative
defenses of waiver and quasi-estoppel as a matter of law.[4]  

In its response to Torch’s motion for summary judgment, AMI argues
that the Settlement Agreement did not transfer, convey, or assign AMI’s rights
to sue Torch or AMI’s rights to be compensated by Torch for the use of its
proprietary information to Greenlee, Wolleben, or Telsus.  According to AMI, the two parties never
reached an agreement as to which owned the Torch prospect, the Torch Energy
Contract, or any claims related thereto. 

 AMI contends that
Torch has misinterpreted sections 2(C), 5.5, and 5.12 of the Settlement
Agreement.  According to AMI, sections 2(C),
5.5, and 5.12 did not convey or transfer its rights to Greenlee or Wolleben
because there is nothing in the Settlement Agreement that expressly does so and
interpreting otherwise is against standard contract interpretation.  AMI points out that section 5.5 and section
5.12 are representations of what Greenlee and Wolleben thought to be the assets
of AMI; the Settlement Agreement does not contain any such representations by
AMI.  AMI also contends that because the
Settlement Agreement is silent as to which party owns the rights to the Torch
Energy Contract, the rights still belonged to AMI.  AMI also cites to other provisions in the
contract which, it argues, support its view that AMI retains all rights and
claims associated with the Torch Energy Contract.[5]


Second, AMI argues that it did not ratify the wrongful
conduct of Greenlee, Wolleben, and Torch.  AMI points out that the sole basis for the
argument of ratification by Torch was based on Torch’s interpretation of the
Settlement Agreement, an interpretation that AMI disagrees with, and therefore,
AMI maintains that there is no evidence for the ratification defense.  AMI further claims that nothing in the
Settlement Agreement ratified the conduct of Greenlee, Wolleben, and Torch and
if AMI wanted to do so, it would have expressly stated its ratification in the
agreement.  Lastly, AMI asserts that the
ratification defense is a genuine issue of fact for the jury, precluding
summary judgment.

In their final argument, AMI claims that Torch’s waiver and
quasi-estoppel defenses are not supported by summary judgment evidence.  AMI asserts that these two defenses are
usually issues of fact for the jury to decide.  AMI urges that there was no waiver in this
case because the Settlement Agreement does not express any intent of a waiver.  AMI also contests Torch’s quasi-estoppel
defense on the grounds that it did not accept any benefit from the Torch Energy
Contract as necessary to invoke the defense.

In Torch’s reply to AMI’s response, it makes three more
arguments. First, Torch argues that AMI ignores section 2(C)’s exclusion of the
Torch Energy Contract as an AMI prospect, which it contends means that the parties
agreed that rights to that contract did not belong to AMI, but to Greenlee and
Wolleben.  Second, Torch argues that AMI
interpreted section 5.10 incorrectly because that section only applies to AMI
assets and prospects, which the Torch Energy Contract is not.  Lastly, Torch argues that its ratification,
waiver, and estoppel defenses are based on the Settlement Agreement.  According to Torch, AMI’s knowledge about the
contract before the Settlement Agreement and its agreement that the Torch
Energy Contract was not an asset or a prospect of AMI in the agreement, amounted
to ratification and waiver and AMI is therefore estopped from making any claims
otherwise.  

The trial court granted Torch’s motion for summary judgment,
but did not specify the ground or grounds upon which judgment was rendered.  This appeal followed. 

In four issues on appeal, AMI contends that the trial court
erred in granting Torch’s motion for summary judgment because  (1) the Settlement Agreement did not transfer
or convey AMI’s interest in its proprietary information and intellectual
property or extinguish its right to be compensated for the use of these
valuable assets, (2) AMI did not ratify Greenlee’s or Wolleben’s conduct with
respect to AMI’s proprietary information and intellectual property, (3) Torch
failed to conclusively prove its affirmative defenses of waiver and
quasi-estoppel, and (4) questions
of material fact exist with respect to Torch’s misappropriation
of AMI’s proprietary
information and intellectual property. 

Discussion

a.                
Standard of review

We review a trial court’s grant or denial of a motion for
summary judgment de novo.  See Tex. Mun. Power Agency v. Pub. Util.
Com’n of Tex., 253 S.W.3d 184, 192, 199 (Tex. 2007).  If the trial court’s order does not specify
the grounds upon which judgment was rendered, we must affirm the summary
judgment if any ground in the summary judgment motion is meritorious.  FM
Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000).

Under the traditional summary judgment standard, the movant
has the burden to show that no genuine issues of material fact exist and that
it is entitled to judgment as a matter of law.  Tex. R.
Civ. P. 166a(c); Nixon v. Mr.
Prop. Mgmt. Co., Inc., 690 S.W.2d 546, 548 (Tex. 1985).  In deciding whether there is a disputed
material fact issue precluding summary judgment, evidence favorable to the
non-movant will be taken as true, and every reasonable inference must be
indulged in favor of the non-movant and any doubts resolved in its favor.  Nixon,
690 S.W.2d at 548–49.  A defendant moving
for a traditional summary judgment must conclusively negate at least one
essential element of each of the plaintiff’s causes of action or conclusively
establish each element of an affirmative defense.  Sci.
Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997). 

When a contract contains an
ambiguity, its interpretation becomes a fact issue.  Coker
v. Coker, 650 S.W.2d 391, 394 (Tex. 1983); Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass’n,
205 S.W.3d 46, 56 (Tex. App.—Dallas 2006, pet. denied).  When construing a written contract, the
primary concern of the court is to ascertain the parties’ intent as expressed
in the contract’s terms.  Chrysler Ins. Co. v. Greenspoint Dodge of
Houston, Inc., 297 S.W.3d 248, 252 (Tex. 2009); Coker, 650 S.W.2d at 393. 

Contract language that can be given
a certain or definite meaning is not ambiguous and is construed as a matter of
law.  Chrysler,
297 S.W.3d at 252; Coker, 650 S.W.2d
at 393.  A contract is ambiguous when its
meaning is uncertain and doubtful or it is reasonably susceptible to more than
one meaning.  Coker, 650 S.W.2d at 393; United
Protective Servs., Inc. v. W. Vill. Ltd. P’ship, 180 S.W.3d 430, 432 (Tex. App.—Dallas
2005, no pet.).  A court may conclude
that a contract is ambiguous even in the absence of such a pleading by either
party.  Sage St. Associates v. Northdale Constr. Co., 863 S.W.2d 438, 445
(Tex. 1993); see Coker, 650 S.W.2d at
392–94 (although both parties asserted property settlement agreement was
unambiguous and moved for summary judgment, supreme court concluded ambiguity
existed).

b.               
Analysis

All of Torch’s summary judgment arguments are based upon its
interpretation of the Settlement Agreement. 
Thus, in order to determine whether summary judgment was appropriate, we
must first determine whether the Settlement Agreement was ambiguous.  See Coker, 650 S.W.2d at 394.  

Having reviewed the contract and
the parties’ arguments, we conclude that the Settlement Agreement is ambiguous. 
Although the parties agreed to exclude the Torch Energy Contract from
the definition of AMI Prospects, the parties also agreed in section 9.1 that “AMI shall solely and exclusively own
any and all AMI Micromagnetic Technology and all related intellectual property.
. . .” Greenlee and Wolleben further represented and warranted that none of
their family members had any rights or claims with respect to “AMI Micromagnetic
Technology, AMI Prospects, or AMI Geophysical Data” and that, to the extent
Greenlee and Wolleben had such a claim, they assigned it to AMI.  

While one might reasonably
interpret the Settlement Agreement to transfer, convey, or assign all of AMI’s rights and claims
associated with the Torch Energy Contract, including its right to sue Torch or its
rights to be compensated by Torch for the use of its proprietary information,
to Greenlee or Wolleben, the agreement
does not expressly say that, and it would be just as reasonable to interpret
the Settlement Agreement to reserve the Torch Energy Contract and all rights
and claims associated with it to AMI.  In
addition to the absence
of any language of conveyance with respect to the Torch
Energy Contract, the Settlement
Agreement contains other provisions that convey and assign
equity interests in certain contracts to Greenlee and Wolleben.  The parties chose not
to use this conveyance language for the Torch Energy Contract. 
Additionally, the Settlement
Agreement does not release or relinquish any claims that AMI
might have against third parties who were provided with AMI’s confidential
information by Greenlee or Wolleben.[6] 
It does not release
Torch, nor does it convey any claims that AMI might have against
Torch to Greenlee and Wolleben.  We agree with Greenlee
and Wolleben that the summary judgment record demonstrates that the Torch
Energy Contract was disclosed to AMI, that AMI knew its contents and purposes, and that it
precludes any claims by AMI against Greenlee and Wolleben. We do not, however, agree that it
bars
such claims against Torch.

Moreover, section
2(C) addresses
AMI’s prospects; it does not address the use of proprietary and confidential
information.  The phrase “AMI Prospects” concerns listings of companies and
leads.  It is distinct from “AMI Micromagnetic Technology” and “AMI Geophysical Data,” both of which concern
AMI’s confidential
and propriety intellectual property.  This
language could reasonably be read to suggest that the companies and contacts
are defined as “prospects,” but the intellectual property related to such work
is not covered by that definition.  Additionally, section 5.5
does not contain an agreement by AMI that the assets listed on exhibit 3 constitute
all of AMI’s assets.  On the contrary,
section 5.10 makes it clear that AMI does not agree that its assets are limited
to items listed on exhibit 3 and AMI reserves its rights for assets not listed
in that paragraph.  Section 5.12 likewise
is a representation by Greenlee and Wolleben; it does not reflect an agreement of the
parties with respect to
this issue.  Sections
9.1 and 9.2 expressly
state that AMI owns all of the technology in question and all related intellectual
property.  Finally, section 25 is
contrary to the assertion that the Settlement Agreement constitutes a conveyance
to Greenlee and Wolleben
of all rights under the Torch Energy Contract.

Having reviewed the entire
agreement, we are uncertain about the parties’ intentions when they entered
into the Settlement Agreement.  We,
therefore, conclude that, at a minimum, a contract ambiguity exists regarding
whether AMI transferred
or conveyed any rights it had with respect to the Torch Energy Contract to
Greenlee and Wolleben under the terms
of the Settlement Agreement and whether that transfer also extinguished AMI’s
right to be compensated for the use of any AMI Micromagnetic Technology and all
related intellectual property.

Because all of Torch’s summary
arguments were premised upon their interpretation of an agreement that we have
determined to be ambiguous, the trial court erred in rendering summary judgment
on any ground argued by Torch.  See Coker, 650 S.W.2d at 394 (“When a
contract contains an ambiguity, the granting of a motion for summary judgment
is improper because the interpretation of the instrument becomes a fact
issue.”).  Therefore, we reverse the
summary judgment and remand this matter to the trial court for further
proceedings consistent with this opinion.

Conclusion

We reverse the judgment of the
trial court and remand for further proceedings.

 

 

                                                                   Jim
Sharp

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Justices Sharp and Brown.











[1]           At
the time, Lendrum was the President and Chief Operating Officer of Torch
Energy Advisors, Inc. and the President of Torch E&P Co.





[2]           Greenlee
signed the document on behalf of Telsus.





[3]           Torch’s motion for summary judgment
also argues that Rockport had no interest in the Torch Energy Contract and that
AMI had improperly joined Rockport as a defendant.   According to Torch, Rockport was simply a
corporation that Lendrum conducted business through prior to becoming President
and Chief Operating Officer of Torch Energy Advisors, Inc. AMI nonsuited
Rockport when it filed its response to Torch’s motion for summary judgment.





[4]
          Specifically, Torch contends that waiver was established as a matter of
law when AMI acknowledged the Torch Energy Contract and gave up any interest in
it via the Settlement Agreement.  Torch
also claims that AMI is estopped as a matter of law from claiming that the
Torch Energy Contract did not go to Greenlee and Wolleben in the Settlement
Agreement because AMI knowingly chose to exclude the Torch Energy Contract from
AMI’s assets under the terms of the Settlement Agreement and AMI benefited from
the Settlement Agreement.





[5]           Specifically,
AMI cites to section 5.10 of the Settlement Agreement which states that in the event Greenlee, Wolleben, and/or their spouses
“have directly or indirectly retained any asset of AMI or the benefit of any
AMI Prospects or consulting projects sold to third party clients of AMI which
is not disclosed in Exhibit ‘3’ such asset and all of the financial benefits
related thereto shall be the sole property of AMI.”  AMI also
cites to section 25 which provides in relevant part: “The Parties acknowledge
and agree that no
statements, promises, or representations have been made
by any Party to the other or are to be relied upon by any third person or entity.  No third party beneficiary or
other rights are created by or arise from
this Agreement.  This Agreement shall not affect any
contractual rights the parties to this Agreement may have with third
parties. . . .”  AMI argues that section 25 makes two things
clear: (1) there is no language in the Settlement Agreement that confers the
rights of the Torch Energy Contract to Greenlee or Wolleben, and (2) the
Settlement Agreement does not confer third party beneficiary rights to Torch,
evidenced by the clear and unambiguous language in this section.





[6]           In fact, section 25 of the Settlement
Agreement expressly states that “[t]his Agreement shall not affect any contractual
rights the parties to this Agreement may have with third
parties. . . .”