**Opinion issued August 29, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-13-00306-CV**

———————————

**WILLIAM J. MITCHELL, JR., Appellant**

**V.**

**CONRAD MITCHELL, INDIVIDUALLY AND AS INDEPENDENT EXECUTOR OF THE ESTATE OF E. L. MITCHELL, DECEASED, Appellee**

---

**On Appeal from County Court at Law No. 1 & Probate Court**
**Brazoria County, Texas**
**Trial Court Case No. PRO28848**

---

# O P I N I O N

William J. Mitchell, Jr. filed suit against his brother, Conrad Mitchell, individually and as independent executor of their mother's estate, for numerous causes of action relating to Conrad's handling of the estate, as well as a claim for

breach of contract.[1]  In three issues, William, Jr. is appealing both the trial court's denial of his motion for partial summary judgment and the trial court's granting of Conrad's motion for summary judgment.  We reverse the trial court's grant of summary judgment in Conrad's favor, and we overrule William, Jr.'s issues pertaining to the denial of his motion for partial summary judgment on his breach of fiduciary duty claim against Conrad. We remand to the trial court for further proceedings.

## Background

William, Jr., Conrad, and Robert Mitchell are the only children of William Mitchell, Sr. and Edna L. Mitchell.  William, Sr. died on July 2, 1993; Edna died on May 15, 2006.  William, Jr., Conrad and Robert are each one-third residual beneficiaries under Edna's will.  Conrad, who also served as Edna's attorney-in-fact since 1995, is the executor of Edna's estate.

This appeal is the most recent round in a costly legal battle among these three brothers that has resulted in multiple legal proceedings over the last decade-and-a-half in various state and federal courts.  In the instant suit, William, Jr. is suing his brother Conrad, both individually and as executor of Edna's estate, for multiple causes of actions stemming from Conrad's alleged failure to account

---

[1]     The individuals involved in this appeal all share the same surname.  For the sake of clarity, we will address them by their first names.

for or collect rental income allegedly owed to Edna's estate, Conrad's breach of a December 2004 letter agreement, in which he agreed to assume William, Jr.'s liability to Edna's estate for his promissory note, and Conrad's failure to collect on the three promissory notes payable to Edna, including William, Jr.'s.

## A.    The Bermuda Properties

On February 18, 1992, Edna and William, Sr. executed deeds conveying ownership of two rental properties in Bermuda (the "Bermuda Properties") to each of their sons in equal shares. As part of the transaction, William, Jr., Conrad, and Robert leased the Bermuda Properties back to their parents for a period of time not to exceed more than fifteen years (the "Lease Agreement").[2] Under the terms of the Lease Agreement, Edna and William, Sr. agreed to lease the properties for $600 per year and to pay all "maintenance, taxes, insurance, etc." owing on the Bermuda Properties. In return, Edna and William, Sr. were entitled to receive any rental income generated by the Bermuda Properties during the leasehold. Edna and William, Sr. also expressly reserved the right to terminate the Lease Agreement  at any time during the life of the contract.

William, Jr. contends that the Bermuda Properties generated an average of $141,923.88 in rental income per year between 2001 and 2007, and that Conrad

---

[2]    If neither Edna nor William, Sr. terminated the Lease Agreement beforehand, the agreement expired on its own terms on February 20, 2007—fifteen years after the lease was executed.

failed to account for or collect any rental income belonging to Edna's estate pursuant to the Lease Agreement. Conrad, however, contends that the Lease Agreement "never went into effect" and that neither William, Sr. nor Edna received any rental income from the Bermuda Properties from 1992 until their respective deaths in 1993 and 2006. Conrad further contends that any rental income generated by the Bermuda Properties was disbursed to all three brothers in equal shares until November 30, 2000—the date William, Jr. signed the Stipulation, selling his interest in the Bermuda Properties, "including, without limitation, any claim to the income, profits or other thing of value derived from operations of the property."

## B. Mitchell Family Enterprises, Ltd.

Edna also held an ownership interest in a hotel property in New Jersey through a closely held New Jersey corporation named Slumber Inc. On July 31, 2002, a family limited partnership named Mitchell Family Enterprises, Ltd. (the "Family Partnership") was organized in which Edna and her three sons were limited partners. Certain assets, including Edna's ownership interest in Slumber Inc., were transferred to the Family Partnership.

On December 5, 2003, Edna transferred her interest in the Family Partnership to William, Jr., Conrad, and Robert in equal shares. Each son executed a promissory note in favor of Edna in the principal amount of $1,143,000, with a

4

maturity date of December 5, 2008. Interest on each note accrued at a rate of 3.5% per annum and became due on the last day of December of each year until maturity. The notes further provided that interest would accrue at a rate of 10% per annum on all unpaid sums following maturity. According to the unobjected-to summary judgment evidence, the transfer of Edna's ownership interest in Slumber Inc. to her sons by means of the Family Partnership was part of a "sophisticated estate plan," under the terms of which each son was to receive his own promissory note back after Edna's death as part of the equitable distribution of her estate, as set forth in her will.

## C. Prior Litigation and Relevant Settlement Agreements

Beginning in the late 1990's, William, Jr. filed multiple lawsuits in New Jersey against Conrad, Edna, Robert, and others regarding the handling of the family businesses, including Conrad's alleged diversion of funds from Slumber Inc. to another family business, constructive termination of William, Jr.'s employment with Slumber Inc. and Conrad's failure to account for and release payments of rental income generated by the Bermuda Properties. Those suits eventually culminated in a Stipulation of Settlement entered in the Superior Court of New Jersey Chancery Division, Bergen County, on November 30, 2000 (the "Stipulation"), which, according to William, Jr., "ostensibly resolved the many . . . issues of ownership, governance, control and operation of the family businesses."

### 1. New Jersey Stipulation of Settlement

The Stipulation, which was entered into on November 30, 2000, states in pertinent part that "[i]t is the intention of the signatories to this agreement [including, inter alia, William, Jr., Conrad, Robert, and Edna] to reach a global settlement on all issues affecting them, including those claims that have been brought in other jurisdictions and those that have been raised as of this time." Under the terms of the Stipulation, Conrad and Robert agreed to purchase William, Jr.'s one-third interest in the Bermuda Properties for $775,000. "This payment shall be in consideration for all William [Jr.]'s right[,] title[,] and interest in the property, including, without limitation, any claim to the income, profits or other thing of value derived from operations of the property."

### 2. New Lawsuits

The Stipulation, however, did not end the litigation, and the following year, William, Jr. filed suit in Brazoria County, Texas, seeking appointment as Edna's guardian and termination of the general power of attorney that Edna had previously executed appointing Conrad as her agent. William, Jr. also filed suit in Harris County, Texas, in 2003 against Conrad, Robert, Edna, the Family Partnership, and others in which he alleged claims for breach of fiduciary duty, oppression of a minority shareholder, and breach of contract based in part on Conrad's handling of Slumber, Inc. and his control of the Bermuda Properties.

**3.    Compromise Settlement Agreement**

In order to resolve their ongoing legal disputes, including these new 2001 and 2003 lawsuits, William, Jr., Conrad, Robert, and Edna entered into a Compromise Settlement Agreement on October 12, 2004 (the "Settlement Agreement"). The Settlement Agreement purports to resolve "all claims and causes of action of any kind whatsoever which the Releasing Parties [have] or may have in the future against the Released Parties." The Settlement Agreement defines the term "Releasing Parties" as William, Jr. and "Released Parties" as, inter alia, Edna, Conrad, both individually and as attorney-in-fact for Edna, Robert, the Family Partnership, and Slumber, Inc. The Settlement Agreement further states:

> This Settlement Agreement shall be global that will forever bar any of the parties from re-instituting any law suits concerning . . . the handling of Edna Mitchell's estate up to the date of this settlement and/or any subsequent actions dealing with her estate in relation to [the Family Partnership], Mitchell Management, Inc., created for the benefit of Edna Mitchell and her heirs.

The Settlement Agreement's "Release" section further provides:

> The Releasing Parties generally release and forever discharge for the Released Parties from any and all claims, demands, and causes of action of whatever kind or character which the Releasing Parties have, or may have in the future, based on any events that have occurred prior to the date this Settlement Agreement is signed, known or unknown, whether or not growing out of or connected in any way with, the matters alleged in the Litigation, save and except claims for breach of the Settlement Agreement.

"This Settlement Agreement may not be amended, altered, modified or changed in any way except in writing signed by all Parties to this Settlement Agreement."

Under the terms of the Settlement Agreement, William, Jr. agreed to sell 187 shares of Slumber Inc. to Conrad and Robert (and/or their designees and/or their heirs) for $3,740,000 on or before December 5, 2004. He also agreed to sell to Conrad and Robert (and/or their designees and/or their heirs) on December 5, 2004 the additional 146 shares that he had "bought from his mother by executing a note for $1,143,000.00 payable to Edna Mitchell that are held in the Family Limited Partnership."

## 4. Supplemental Letter Agreement

On December 10, 2004, Conrad's attorney sent a letter to William, Jr.'s attorney regarding the "Mitchell Settlement" (the "Supplemental Letter Agreement"). The letter, which expressly states that it is "For Settlement Purposes Only," provides: "As per our conversation please find the changes to the Settlement Agreement herein. If this proposal appears to be acceptable to you, please sign and return this agreement to me." The Supplemental Letter Agreement's proposed changes include the following:

3. Slumber Inc., will purchase 94 shares initially for $1,880,000.00.

4. Then by January 14, 2005 Slumber will buy 93 shares [for] $1,860,000.00.

8

5. The remaining 146 shares will be purchased by May 14, 2005 . . . less the assumption of $1,143,000.00 and [sic] to Edna Mitchell leaving a balance of $1,777,000.00.

6. Conrad and Robert will assume effective December 6, 2004, the principal obligation of the $1,143,000.00 promissory note from [William, Jr.] to Edna and the obligation to pay Post-December 6, 2004 interest. [William, Jr.] will remain responsible for the payment of accrued interest at 3.5% for one year and two days ending December 4, 2004.

7. Conrad and Robert (or Slumber Inc.) will pay [William, Jr.] on or before January 14, 2005, $1,860,000.00 plus 3.5% interest thereon, and remaining balance due.

8. Conrad and Robert (or Slumber Inc.) will pay [William, Jr.] on or before May 14, 2005, $1,777,000.00 plus 3.5% interest thereon.

The Supplemental Letter Agreement is not signed by the parties to the Settlement Agreement, only their attorneys, and it does not indicate that the attorneys are signing the agreement on behalf of their respective clients.

William, Jr. later sued Robert and Conrad for breach of the Settlement Agreement and Supplemental Letter Agreement. That suit, which was removed to federal court, was based on Robert and Conrad's alleged failure to (1) assume William, Jr.'s promissory note to Edna, (2) purchase William, Jr.'s 146 shares of the Family Partnership, and (3) pay interest on the dollar amounts due to William, Jr. William, Jr. moved for summary judgment on his breach of contract claim and request for attorney's fees. The February 13, 2007 order denying the motion states that William, Jr. was not entitled to judgment as a matter of law on his breach of

9

contract claim because he did not allege that he had suffered any actual damage when he filed his motion. The order further states that Robert and Conrad (or their designee) paid all claims on the breach and that, as William, Jr. acknowledged, Robert and Conrad's obligations under both agreements were satisfied in full as of August 15, 2006.[3]

## D. Present Litigation

Edna died on May 15, 2006, while William, Jr.'s suit was pending before the federal court. On May 30, 2006, Edna's last will and testament was admitted to probate in County Court at Law Number One and the Probate Court of Brazoria County, Texas under docket No. PR028848. Conrad was appointed executor of Edna's estate.

William, Jr., as a one-third beneficiary under Edna's will, filed suit seeking an accounting and distribution of the estate and the removal of Conrad as executor. William, Jr. also alleged the following causes of action against Conrad, individually and/or as executor of Edna's estate: (1) breach of fiduciary duty, (2) fraud, (3) breach of contract, (4) conspiracy to defraud, (5) misapplication of fiduciary property, and (6) tortious interference with inheritance rights. William, Jr.'s claims are based on Conrad's and Robert's alleged agreement to assume

---

[3]     The court also denied William, Jr.'s claim for attorney's fees because (1) William, Jr. accepted payment in full before a judicial determination of the merits of his claim, and thus, he did not "prevail" on his breach of contract claim and (2) he did not recover any damages based on a judicial determination of his claim.

William, Jr.'s liability to Edna's estate for his promissory note, Conrad's failure to collect on the promissory notes payable to Edna, including William, Jr.'s, and the disposition of the proceeds from the Bermuda Properties.

Conrad responded and pleaded the affirmative defenses of res judicata, judicial estoppel, equitable estoppel, and accord and satisfaction. He later filed a counterclaim against William, Jr. The third brother, Robert, intervened in the suit on July 26, 2011 to protect his interests. Robert ultimately non-suited his claims, and his pleadings are not otherwise relevant to this appeal.

In November 2012, William, Jr. moved for partial summary judgment on his breach-of-fiduciary-duty claim. The following month, Conrad moved for summary judgment based on three of his four pleaded affirmative defenses (i.e., res judicata, equitable estoppel, and accord and satisfaction). Both sides objected to portions of the other's summary-judgment evidence.[4] The trial court denied William, Jr.'s motion and granted Conrad's motion.[5] This appeal followed.

### Standard of Review and Applicable Law

We review a trial court's decision to grant or deny a motion for summary judgment de novo. *Mid–Century Ins. Co. of Tex. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007); *Harvest House Publishers. v. Local Church*, 190 S.W.3d 204, 209

---

[4] The appellate record does not reflect that the trial court ever expressly ruled on either side's objections.

[5] The judgment, however, did not become final until Robert, the intervener, non-suited his claims, which were not the subject of any motion for summary judgment.

11

(Tex. App.—Houston [1st Dist.] 2006, pet. denied) (stating that same standard of review applies to denials and grants of summary judgment).

Under the summary judgment standard set forth in Rule of Civil Procedure 166a(c), the movant has the burden to show that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999); *see also Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 376 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). Similarly, a defendant moving for summary judgment on an affirmative defense pursuant to Rule 166a(c) has the burden to conclusively establish each element of that defense as a matter of law. *See KPMG Peat Marwick*, 988 S.W.2d at 748; *Essex Crane Rental Corp.*, 371 S.W.3d at 381. If the movant meets its burden, then and only then must the non-movant respond and present evidence raising a material fact issue. *See Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999); *KPMG Peat Marwick*, 988 S.W.2d at 748; *see also Essex Crane Rental Corp.*, 371 S.W.3d at 376. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true, and every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *See KPMG Peat Marwick*, 988 S.W.2d at 748; *see also Essex Crane Rental Corp.*, 371 S.W.3d at 376.

When a contract contains an ambiguity, its interpretation becomes a fact issue. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983); *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 56 (Tex. App.—Dallas 2006, pet. denied). When construing a written contract, the primary concern of the court is to ascertain the parties' intent as expressed in the contract's terms. *Chrysler Ins. Co. v. Greenspoint Dodge of Hous., Inc.*, 297 S.W.3d 248, 252 (Tex. 2009); *Coker*, 650 S.W.2d at 393. "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Coker*, 650 S.W.2d at 393.

Contract language that can be given a certain or definite meaning is not ambiguous and is construed as a matter of law. *Chrysler*, 297 S.W.3d at 252; *Coker*, 650 S.W.2d at 393. A contract is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Coker*, 650 S.W.2d at 393; *United Protective Servs., Inc. v. W. Vill. Ltd. P'ship*, 180 S.W.3d 430, 432 (Tex. App.—Dallas 2005, no pet.). A court may conclude that a contract is ambiguous even in the absence of such a pleading by either party. *Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex. 1993); *see Coker*, 650 S.W.2d at 392–94 (although both parties asserted property settlement agreement was unambiguous and moved for summary judgment, supreme court concluded ambiguity existed).

## Discussion

In three issues, William is appealing both the trial court's denial of his motion for partial summary judgment and the granting of Conrad's motion for summary judgment.

### A.  Conrad's Motion for Summary Judgment[6]

Conrad essentially argues that we can affirm the trial court's grant of summary judgment in his favor based on the evidence—without regard to the legal bases for summary judgment that he argued to the trial court in his motion.

Here, Conrad pleaded the affirmative defenses of res judicata, judicial estoppel, equitable estoppel, and accord and satisfaction.  Affirmative defenses must be pleaded, otherwise they are deemed to be waived.  *See* TEX. R. CIV. P. 94 (requiring that party plead matters like estoppel and other avoidances or affirmative defenses); *KPMG Peat Marwick*, 988 S.W.2d at 749–50 (stating that party asserting fraudulent concealment as affirmative defense to statute of limitations claim has burden to plead defense and to provide sufficient evidence to raise questions of fact).  Conrad moved for summary judgment based on three of these defenses (i.e., res judicata, equitable estoppel, or accord and satisfaction).

---

[6]  In his third issue, William, Jr. argues that, to the extent it relied on inadmissible evidence when ruling on the summary judgments, the trial court erred by admitting such evidence over William, Jr.'s objections.  Because we can determine whether the trial court erred by granting Conrad's motion based on evidence that was *not* objected to by either party, it is not necessary for us to address William, Jr.'s third issue, as it pertains to Conrad's motion.  *See* TEX. R. APP. P. 47.1.

14

The trial court granted Conrad's motion without specifying the basis for its ruling (i.e., res judicata, equitable estoppel, and accord and satisfaction). Therefore, we must affirm the summary judgment if any of the grounds presented to the trial court and preserved for appellate review are meritorious. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003), 128 S.W.3d at 216; *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996); *see also Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 204 (Tex. 2002) ("A court cannot grant summary judgment on grounds that were not presented."); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) ("[A] motion for summary judgment must itself expressly present the grounds upon which it is made. A motion must stand or fall on the grounds expressly presented in the motion.").

On appeal, however, Conrad argues only that he conclusively established his affirmative defense of equitable estoppel; he does not dispute William, Jr.'s arguments that he failed to meet his burden of proof with regard to his affirmative defenses of res judicata and accord and satisfaction. By doing so, Conrad has effectively abandoned res judicata and accord and satisfaction as grounds for summary judgment on appeal. Accordingly, we will limit our discussion to the only ground asserted in Conrad's motion for summary judgment that he has not abandoned—equitable estoppel. *See Wojcik v. Wesolick*, 97 S.W.3d 335, 336–37

15

(Tex. App.—Houston [14th Dist.] 2003, no pet.) (citing *Hall v. Tomball Nursing Ctr., Inc.*, 926 S.W.2d 617, 619 (Tex. App.—Houston [14th Dist.] 1996, no writ) (holding that court of appeals need not address ground in motion for summary judgment that appellee abandons on appeal))).

### 1. Equitable Estoppel

William, Jr. argues that the trial court erred in granting Conrad's motion for summary judgment because Conrad failed to conclusively establish his affirmative defense of equitable estoppel. "[T]he doctrine of equitable estoppel requires: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515–16 (Tex. 1998).

Conrad's equitable estoppel argument is premised on his interpretation of the Settlement Agreement and the Stipulation—both of which he contends are unambiguous. With regard to his equitable estoppel argument, Conrad argues that:

> William[, Jr.] has repeatedly agreed to settle and resolve his claims concerning the [Family Partnership] and the Bermuda [P]roperties, only to engage equally repeatedly in a campaign of litigation, re-litigation, and re-litigation, again. Conrad's payments, in his individual and representative capacities, to William[, Jr.] constitute a change of position—a reliance—on William[, Jr.]'s false statements that he intended to abide by the various settlement agreements into which he entered, including the [Settlement Agreement] and

16

[Stipulation] raised by Conrad in his Motion for Summary Judgment. Individually, as Edith Mitchell's personal representative, and as the representative of her Estate, Conrad relied upon William[, Jr.]'s statements that he intended to resolve these matters, only to find himself embroiled in continuing litigation that began long before his mother's death and continues to this day.

"When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue." *Coker*, 650 S.W.2d at 394. Thus, in order to determine whether the trial court's granting of summary judgment on the affirmative defense of equitable estoppel was appropriate, we must first determine whether the agreements these arguments are based upon are ambiguous. *See id.*

### (a) The Settlement Agreement

Conrad argues that, by its plain language, the Settlement Agreement contains a prospective release that bars any future claim by William, Jr. relevant to the Family Partnership or the promissory notes given by each brother to Edna in December 2003 in exchange for Edna's interest in the Family Partnership. William, Jr., on the other hand, contends that nothing in the Settlement Agreement indicates that he intended to release or settle any claims he may have in the future as a beneficiary of Edna's will and that the agreement does not "absolve[] Executor Conrad years in advance of his future failures to discharge the fiduciary duties with which he was charged upon becoming executor of Edna's estate."

17

Although the Settlement Agreement resolves "all claims and causes of action of any kind whatsoever" that William, Jr. has or may have in the future against Conrad, both individually and as attorney-in-fact for Edna, Robert, and Edna herself, and it purports to be "global" and "forever bar" any of the parties from "re-instituting suits concerning . . . any subsequent actions dealing with [Edna's] estate in relation to the [Family Partnership]," the Settlement Agreement does not expressly prohibit William, Jr. from suing Conrad, as executor of their mother's estate, to protect William, Jr.'s interest as a beneficiary of the estate. Having reviewed the Settlement Agreement and the parties' arguments, we conclude that the Settlement Agreement is ambiguous with respect to whether it applies to William, Jr.'s instant claims. While one might reasonably interpret the Settlement Agreement to cover future interests acquired by William, Jr. as a beneficiary under Edna's will with respect to the Family Partnership, the agreement does not expressly say that, and it would be just as reasonable to interpret the Settlement Agreement to only cover claims that are based on events leading up to the signing of the Settlement Agreement in 2004, particularly in light of the language utilized in the "Release" section of the agreement (i.e., releasing claims "based on any events that have occurred prior to the date this Settlement Agreement is signed"). Under such an interpretation, any actions taken by Conrad since 2006, as executor of Edna's estate, would not be covered by the Settlement

18

Agreement. Thus, there is a question of fact with respect to whether William, Jr.'s claims in the underlying suit are covered by the Settlement Agreement. *See Coker*, 650 S.W.2d at 393–94 (stating contract is ambiguous when it is reasonably susceptible to more than one meaning and that such ambiguity creates fact issue which precludes summary judgment).

### (b) The Stipulation

Conrad argues that the plain language of the Stipulation unambiguously demonstrates that William, Jr. sold his ownership interest in the Bermuda Properties to Conrad and Robert in December 2000, along with any claim William, Jr. had or may have in the future—in any capacity—to any proceeds and rental income derived from those properties. According to Conrad, the Stipulation, which by its terms was intended by the parties to be "global" in nature, was intended to resolve any claims among the parties—including claims to any interest or proceeds derived from the Bermuda Properties—"fully, finally, and once and for all." William, Jr., however, argues that the Stipulation, which predates Edna's death by five years, does not expressly indicate that he agreed to give up any interest to which he would be entitled in the future under his mother's will. As a result, William, Jr. argues, the Stipulation is inapplicable to his instant claims, which were brought solely as a beneficiary of Edna's estate. The Stipulation states, in pertinent part: "It is the intention of the signatories to this agreement

19

[including, inter alia, William, Jr., Conrad, Robert, and Edna] to reach a global settlement on all issues affecting them, including those claims that have been brought in other jurisdictions and those that have been raised as of this time." Under the terms of the Stipulation, the parties agreed that Conrad and Robert would purchase William, Jr.'s interest in the Bermuda Properties for $775,000 and that this payment was "in consideration for all William [Jr.]'s right title and interest in the property, including, without limitation, any claim to the income, profits or other thing of value derived from operations of the property."

Having reviewed the agreement and the parties' arguments, we conclude that the Stipulation is ambiguous. While one might reasonably interpret the Stipulation as Conrad does (i.e., encompassing all claims to all proceeds and rental income from the Bermuda Properties, whenever accrued, whenever paid, by William, Jr. in any capacity), the agreement does not expressly say that, and it would be just as reasonable to interpret the Stipulation to only apply to William, Jr.'s claims to proceeds and rental income that accrued as of that time (December 2000), and not to any claim William, Jr. might have to such proceeds and rental income as a beneficiary to his mother's estate at some future time. Thus, there is a question of fact with respect to whether William, Jr.'s claims in the underlying suit are covered by the Stipulation. *See Coker*, 650 S.W.2d at 393–94 (stating contract is

ambiguous when it is reasonably susceptible to more than one meaning and that such ambiguity creates fact issue which precludes summary judgment).

## 2. Conclusion

Because Conrad's equitable estoppel argument was premised upon his interpretation of two agreements that we have determined to be ambiguous, the trial court erred in rendering summary judgment in favor of Conrad on his affirmative defense of equitable estoppel. *See Coker*, 650 S.W.2d at 394 ("When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue.").

On appeal, William, Jr. contends that the trial court erred in granting a final summary judgment that purported to dispose "of all matters at issue before the Court" because Conrad's motion for summary judgment did not address William, Jr.'s claims for removal of Conrad as executor or William, Jr.'s claim for accounting and distribution of the estate. Because we are reversing the trial court's grant of summary judgment and remanding the case for further proceedings, we need not address this issue. *See* TEX. R. APP. P. 47.1.

## B. William, Jr.'s Motion for Partial Summary Judgment

William, Jr. moved for summary judgment on his breach of fiduciary duty claim, pursuant to Rule 166a(c). *See* TEX. R. CIV. P. 166a(c) (stating movant entitled to summary judgment on claim if he can show that there is no genuine

issue of material fact and that he is entitled to judgment as matter of law). The trial court denied his motion.

Generally, the denial of a motion for summary judgment is an interlocutory order that, with a few exceptions, is not appealable. *Cincinnati Life Ins.*, 927 S.W.2d at 625. One such exception arises when the parties file motions for summary judgment on the same issues and the trial court grants one motion and denies the other. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (citing *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000)). Under such circumstances, the reviewing court considers the summary judgment evidence presented by both sides, determines all questions presented, and, if the reviewing court determines that the trial court erred, renders the judgment the trial court should have rendered. *See Valence Operating Co.*, 164 S.W.3d at 661.

William, Jr. argues that this case is similar to *Fletcher v. Energy Resource Technology GOM, Inc.*, in which we reviewed the granting of the plaintiff's motion for summary judgment and the denial of the defendant's motion for partial summary judgment. No. 01–11–00553–CV, 2012 WL 3628896, at *1–2 (Tex. App.—Houston [1st Dist.], Aug. 23, 2012, no pet.) (mem. op.). *Fletcher*, however, is distinguishable. In that case, the plaintiff moved for summary judgment on his breach of contract claim and the defendant moved for summary judgment on the

plaintiff's breach of contract claim, as well as on the defendant's affirmative defense of lack of consideration. *Id.* As such, that case fits squarely within the parameters of the exception for cross motions for summary judgment recognized in *Valence Operating Co*. *See Valence Operating Co.*, 164 S.W.3d at 661 (stating trial court has jurisdiction to consider denial of motion for summary judgment when trial court grants one motion and denies the other on same issue).

Unlike in *Fletcher*, the cross-motion exception is inapplicable in the instant case because the parties did not move for summary judgment on the same issue—William, Jr. moved for summary judgment on his breach of fiduciary duty claim and Conrad moved for summary judgment solely on the basis of three of his affirmative defenses. Accordingly, we overrule William, Jr.'s issues pertaining to the denial of his motion for partial summary judgment on his breach of fiduciary duty claim against Conrad. *Cf. Frankoff v. Norman*, No. 14–11–00152–CV, 2012 WL 2394050, at *6, 8 (Tex. App.—Houston [14th Dist.] Jun. 26, 2012, no pet.) (mem. op.) (reversing trial court's grant of summary judgment on defendant's affirmative defenses and overruling plaintiff's appellate challenge to trial court's denial of plaintiff's motion for summary judgment on his breach of fiduciary duty claim because challenge did not fit within any exception to general rule that appellate courts may not review denials of summary judgment).

## Conclusion

We reverse the trial court's grant of summary judgment in Conrad's favor and we overrule William, Jr.'s issues pertaining to the denial of his motion for partial summary judgment on his breach of fiduciary duty claim against Conrad. We remand to the trial court for further proceedings consistent with this opinion.


Jim Sharp
Justice


Panel consists of Justices Jennings, Higley, and Sharp.