# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00442-CV

**Eureka Holdings Acquisitions, L.P., Appellant**

**v.**

**Marshall Apartments, LLC, Appellee**

---

### FROM THE 53RD DISTRICT COURT OF TRAVIS COUNTY,
### NO. D-1-GN-16-005630, THE HONORABLE MAYA GUERRA GAMBLE, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellant Eureka Holdings Acquisitions, L.P. (Eureka) appeals from the trial court's judgment in a case arising from Eureka's twice-failed real-estate transaction with Appellee Marshall Apartments, LLC, (Marshall) concerning the sale of government-sponsored housing in Austin, Texas. Eureka contends that the trial court erred by (1) dismissing Eureka's breach-of-contract claim; (2) dismissing Eureka's promissory-estoppel claim; (3) failing to dismiss Marshall's breach-of-contract counterclaim; and (4) awarding attorneys' fees to Marshall's counsel, counsel's law firm (together, the Counsel Defendants), and Marshall; and failing to award attorneys' fees to Eureka. We affirm the judgment.

## BACKGROUND

In December 2015, Marshall entered into a contract (Original Contract) to sell a government-sponsored apartment complex to Eureka. The Original Contract included conditions

precedent to closing the sale because the property was covered by a Section-8 Housing Assistance Payment Contract (HAP Contract) and a loan agreement with Austin Housing Financial Corporation (AHFC Loan).

One of the material conditions of closing required Eureka to apply for and obtain "Assumption Approval" of the government-backed loans binding Marshall to the property within one hundred days of the Effective Date of the Original Contract.[1]  As defined in the Original Contract, "Assumption Approval" required Eureka to (1) assume the AHFC loan, which occurred when the City of Austin and any servicer "executed and delivered written approval to consummate the assumption of the [l]oan," and (2) obtain "written approval from HUD [Housing and Urban Development] for the assignment of the HAP Contract."

If Eureka did not obtain Assumption Approval within the Assumption Approval Period that expired one hundred days after the Effective Date, Marshall could terminate the contract based upon Eureka's not obtaining a material condition of the closing.  Paragraph 4.2 of the Original Contract, "Seller's Conditions to Closing," provides that Marshall's obligation to close with respect to conveyance of the property "shall be subject to and conditioned upon the fulfillment of" the "condition precedent" that "[a]ll of the documents and funds required to be delivered by [Eureka] to [Marshall] at the Closing pursuant to the terms and conditions hereof shall have been delivered;" and "[t]he Assumption Approval has been obtained."  Paragraph 4.1 likewise provides that Eureka's obligation as purchaser to close "shall be subject to and conditioned upon the fulfillment of" the "condition[] precedent" that "[t]he Assumption Approval

---

[1]  The Original Contract defines the Effective Date as the latest date of execution by the Seller or Purchaser as indicated on the signature page.

has been obtained." Finally, the paragraph titled "Failure or Waiver of Conditions Precedent" states that

> [i]n the event any of the conditions set forth in Paragraphs 4.1 or 4.2 are not fulfilled or waived, the party benefitted by such conditions may, by written notice to the other party, terminate this Contract, whereupon all rights and obligations hereunder of each party shall terminate except those that expressly survive any termination.

If Eureka terminated the Original Contract prior to the expiration of the Assumption Approval Period, which expired one hundred days after the Effective Date, Eureka could seek return of the Earnest Money. If the Original Contract was terminated after this time, the Earnest Money was owed to Marshall.

In April 2016, after the Assumption Approval period had expired, Marshall notified Eureka that Eureka had breached its obligations by failing to obtain Assumption Approval. Two weeks later, Eureka filed a lawsuit in Dallas County, seeking a declaratory judgment that Eureka did not breach the Original Contract and specific performance compelling Marshall to sell the property. After Marshall answered, filed a counterclaim, and moved to transfer venue, the lawsuit was transferred to Travis County. Marshall thereafter filed a motion for partial summary judgment.

Before the trial court ruled on the motion for partial summary judgment, Marshall and Eureka entered into a Settlement Agreement and Release (Settlement Agreement). Pursuant to the section of the Settlement Agreement labeled "Mutual Release and Covenant Not To Sue," Marshall and Eureka agreed to "release and forever discharge one another" from

> any and all claims, suits, actions, liabilities, damages, costs or losses of any kind whatsoever, known or unknown, in law, in equity, or otherwise, . . . including but not limited to those arising under state, federal, or other law, that the Parties ever had, now have or hereafter can, shall, or may have, in the U.S. or any other

3

jurisdiction, arising from or relating in any way to any act or omission of the Parties (or any of them) directly or indirectly concerning the Real Estate Contract, occurring at any time prior to the date on which this Settlement Agreement is executed by all Parties (hereinafter the "Released Claims").

Marshall and Eureka also entered into an Amended and Restated Real Estate Contract (Amended Contract) on November 28, 2017, for the property sale. The Amended Contract contained the same Assumption Approval requirements, conditions precedent, and termination rights as those previously described in the Original Contract.[2] Just like the Original Contract, the Amended Contract required Eureka to obtain Assumption Approval within one hundred days of signing the agreement as a condition of closing. The Amended Contract also defined the closing date as "not later than the last to occur of":

(i)     thirty (30) days after Purchaser's receipt of the Assumption Approval [which includes assumption of the AHFC loan] . . .;

(ii)    thirty (30) days after Purchaser's receipt of the amendments to the Caritas Agreement . . .;[3] [or]

(iii)   one hundred twenty (120) days after the Effective Date . . .

---

[2] The Purchase Price in the Original Contract was $8,364,000.00, and the Purchase Price in the Amended Contract was $9,500,000.00. Both contracts required $250,000.00 as an initial deposit under the Earnest Money paragraphs.

[3] Marshall's sale of the property to Eureka was subject to Caritas of Austin Partnership Housing, LLC's right of first refusal because of a pre-existing agreement that Marshall had entered into with Caritas (Caritas Agreement). Marshall was thus contractually required to confirm that (1) Caritas would not exercise its right of first refusal to purchase the property; and (2) the Caritas Agreement would be amended to delete Caritas' right of first refusal effective as of the date of Eureka's Closing. The Caritas Agreement was amended in November 2017 when Marshall and Eureka entered into the Settlement Agreement and again in on March 9, 2018.

Eureka could extend the closing date for a period of up to twenty days upon written notice to Marshall at least five days prior to the date set for closing; but only if Eureka released to Marshall "a portion of the Earnest Money equal to $125,000.00." The Amended Contract "embodie[d] the entire agreement between the parties" and could be "amended or supplemented only by an instrument in writing executed by the parties."

On April 6, 2018, Marshall notified Eureka that Marshall had not received either (1) a closing date and proof that Eureka had obtained Assumption Approval or (2) five days' written notice seeking an extension of the closing date and the $125,000.00 in earnest money required for an extension. Marshall explained that the Effective Date of the Amended Contract was November 27, 2017. Pursuant to contractual terms, the closing was to occur not later than the last of: (i) thirty days after Eureka's receipt of Assumption Approval, (ii) thirty days after Eureka's receipt of the amendments to the Caritas Agreement, or (iii) one hundred and twenty days after the Effective Date of the Amended Contract. Marshall explained that the Assumption Approval Period was limited to one hundred days after the Effective Date, and thirty days after this date fell on April 7, 2018. Marshall stated that the Caritas Agreement was amended on March 9, 2018, and thirty days after this date fell on April 8, 2018. Finally, Marshall explained that one hundred and twenty days after the Effective Date fell on March 28, 2018. Marshall informed Eureka that, because April 9, 2018, was the latest possible closing date of the Amended Contract, Eureka must notify Marshall in writing no later than 5:00 p.m. on April 9, 2018, if Eureka intended to extend the closing date under the contract's terms. Marshall stated that if Eureka did not intend to extend the closing date, the Amended Contract would terminate pursuant to its terms. Eureka did not notify Marshall by the deadline.

After the deadline passed, Eureka proposed offers of alternative terms to Marshall that included extending contract terms with a lesser amount of earnest money. Eureka acknowledged that it could not obtain Assumption Approval, so Eureka attempted to negotiate terms that would permit Eureka to pay off the AHFC loan rather than assume it. The parties did not reach an agreement.

Eureka thereafter filed a third amended petition in the same 2016 lawsuit it had agreed to dismiss under the Settlement Agreement. Eureka sought rescission of the Settlement Agreement and of the Amended Contract and a declaratory judgment and specific performance compelling Marshall to sell the property under a contract "equitably reformed." Eureka also asserted various tort claims against Marshall. Marshall answered Eureka's third amended petition and asserted counterclaims, including breach of contract, breach of settlement agreement, and tortious interference. Marshall submitted with its answer: (1) the Settlement Agreement that released all parties from all claims directly or indirectly related to the Original Contract; (2) the Amended Contract, and argument that Eureka failed to comply with Paragraph 2.10.5 and timely obtain Assumption Approval; and (3) the April 6, 2018 notification that Marshall sent to Eureka. Eureka moved to dismiss Marshall's first amended counterclaim under the Texas Citizens Participation Act (TCPA).

Marshall moved for summary judgment on all claims in Eureka's fourth amended petition.[4] Marshall argued that Eureka breached the Amended Contract by failing to timely obtain Assumption Approval and failing to timely close the transaction. Marshall stated that it informed

---

[4] Marshall filed a traditional motion for summary judgment on Eureka's third amended petition. In response to Marshall's motion for summary judgment, Eureka filed a fourth amended petition that added a business disparagement claim. Marshall thereafter amended its summary-judgment motion and sought to dismiss Eureka's fourth amended petition.

Eureka on April 6, 2018, that the Amended Contract would terminate on April 9, 2018, and Eureka did not release earnest money to extend the Amended Contract. Finally, Marshall maintained that Eureka released Marshall from alleged liability concerning communications that purportedly concerned the sale of the property when Eureka executed the Settlement Agreement.

In July 2019, the trial court conducted a hearing on Marshall's amended motion for summary judgment on Eureka's fourth amended petition. That same day, the trial court denied Eureka's TCPA motion to dismiss as to all counterclaims except Marshall's tortious-interference counterclaim, which the trial court ordered dismissed with prejudice. Eureka informed the trial court that it would "not appeal the Dismissal Order" denying in part Eureka's TCPA motion to dismiss Marshall's counterclaims, although Eureka stated that it retained the "procedural right to appeal" the "order setting the amount of attorney's fees and sanctions." The trial court subsequently conducted a fee hearing on Eureka's TCPA motion and ordered Marshall to pay attorneys' fees, costs, and sanctions associated with its tortious-interference counterclaim. Eureka thereafter filed a notice of interlocutory appeal of the of the trial court's order denying in part its TCPA motion to dismiss Marshall's counterclaims.

On August 6, 2019, Eureka filed a motion for leave to supplement the summary-judgment record. On August 16, 2019, the trial court granted Marshall's amended motion, awarding Marshall a summary judgment on all of Eureka's claims in the fourth amended petition. The trial court also denied all requests for affirmative relief on Marshall's counterclaims and denied "all other relief not expressly granted." After conducting another hearing, the trial court denied Eureka's motion for leave to supplement the summary-judgment record.

Eureka thereafter filed a fifth amended petition, which reasserted the same claims against Marshall on which the trial court had granted Marshall a summary judgment, based largely

7

upon the same facts. Eureka added to the fifth amended petition a claim for promissory estoppel and also asserted a claim of negligent misrepresentation against the Counsel Defendants.[5]

In October 2019, Marshall filed a "Motion to Enter Final Judgment in Accordance with the Court's Prior Summary Judgment Order and Motion for Sanctions or Alternative Motion to Strike the Fifth Amended Petition or Additional Motion for Traditional Summary Judgment." The Counsel Defendants also moved under the TCPA to dismiss Eureka's claims asserted against them. The trial court noticed both motions for a hearing in November 2019; however, the case was stayed for a year while Eureka pursued an attempted interlocutory appeal of the denial of its TCPA motion to dismiss Marshall's counterclaims. *See Eureka Holdings Acquisitions, L.P. v. Marshall Apartments, LLC*, 597 S.W.3d 921, 924 (Tex. App.—Austin 2020, pet. denied) (*Eureka I*).[6]

Once the trial court case resumed, Marshall amended its motion that requested that the trial court enter final judgment, asking the court for judgment either: in accordance with the court's prior summary-judgment order; by striking Eureka's fifth amended petition; or by disposing of the claims by summary judgment. The Counsel Defendants also amended their TCPA

---

[5] The Counsel Defendants stated that Eureka's drafting of the fifth amended petition left them unsure of which claims Eureka asserted against them. Eureka appeared to assert at least a negligent-misrepresentation claim against an individual attorney who represented Marshall and that attorney's law firm.

[6] In *Eureka I*, we concluded that the time to appeal from the trial court's partial denial of Eureka's TCPA motion to dismiss Marshall's counterclaims began to run when the trial court signed its order addressing the merits of Eureka's motion. *Eureka Holdings Acquisitions, L.P. v. Marshall Apartments, LLC*, 597 S.W.3d 921, 924 (Tex. App.—Austin 2020, pet. denied). Because Eureka's notice of appeal was filed beyond the applicable deadline and there was no statutory basis for an interlocutory appeal from the trial court's subsequent order that addressed only attorney fees for the partial granting of the motion to dismiss, we dismissed the attempted interlocutory appeal for lack of jurisdiction. *Id.* at 924–25.

8

motion. The trial court entered an order that granted the motions. The trial court also ordered that, in accordance with the order dismissing all claims in Eureka's fifth amended petition and its August 2019 order that awarded Marshall a summary judgment on all claims in Eureka's fourth amended petition, Marshall was entitled to its reasonable costs and attorneys' fees incurred as a result of having to defend against the claims "as the prevailing party." Finally, the trial court ordered that the Counsel Defendants were entitled to a mandatory award of costs and reasonable attorneys' fees as successful movants under the version of the TCPA that applied to the suit. The order did not affect Marshall's pending counterclaims. Eureka moved the trial court to reconsider its August 2019 order granting summary judgment on Eureka's fifth amended petition. The trial court denied the motion.

During the evidentiary hearing to determine the attorneys' fees and costs that Marshall and the Counsel Defendants would seek, Eureka argued that the trial court could not determine reasonable and necessary amounts until Marshall's counterclaims were resolved. Marshall announced during the hearing that it would nonsuit its counterclaims without prejudice to avoid further delay of the lawsuit. In May 2021, the trial court entered an order that awarded Marshall $488,302.16 as "reasonable costs, charges, and expenses, including attorneys' fees incurred as the prevailing party" pursuant to Paragraph 8.15 of the Amended Contract, and awarded the Counsel Defendants $32,621.00 as reasonable costs and attorneys' fees incurred in defending against the dismissed legal action in connection with their TCPA motion.

Eureka thereafter moved for award of its own attorneys' fees as a "prevailing party" because Marshall nonsuited its counterclaims. Eureka also moved for entry of a final judgment or motion to modify, correct, or reform any existing final judgment. In August 2021, the trial court denied Eureka's motions and entered a "final judgment disposing of all claims of all parties."

9

## ISSUES ON APPEAL

Eureka raises four issues on appeal. In its first two issues, Eureka argues that the trial court erred by granting judgment against it on its breach-of-contract and promissory-estoppel claims. Eureka next argues that the trial court erred by failing to dismiss Marshall's breach-of-contract counterclaim. Finally, Eureka contends that the trial court's fee awards should be reversed.

### I.      *Breach of Contract*

Eureka first argues that the trial court erred by dismissing its breach-of-contract claim because the Amended Contract did not terminate on April 9, 2018, and the parties orally waived Eureka's Assumption Approval obligations. Marshall responds that the trial court determined that the Amended Contract was unambiguous and that Marshall appropriately terminated the Amended Contract because Eureka did not obtain Assumption Approval.

A party moving for traditional summary judgment bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *see Provident Life & Accident Ins. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). In deciding whether a disputed material fact issue exists to preclude summary judgment, evidence favorable to the nonmovant will be taken as true and every reasonable inference must be indulged in favor of the nonmovant. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549 (Tex. 1985). The evidence raises a genuine issue of fact if reasonable and fair-minded jurists could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

We review a no-evidence summary judgment under the same legal-sufficiency standard used to review a directed verdict. *See* Tex. R. Civ. P. 166a(i). When analyzing a no-evidence summary judgment, we consider all of the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving all doubts against the movant. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (citing *Wilson,* 168 S.W.3d at 823). When the trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm the summary judgment if any of the summary-judgment grounds are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

When construing a contract, a reviewing court's primary goal is to determine the parties' intent as expressed in the terms of the contract. *Chrysler Ins. v. Greenspoint Dodge of Hous., Inc.,* 297 S.W.3d 248, 252 (Tex. 2009); *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983). Contract language that can be given a certain or definite meaning is not ambiguous and is construed as a matter of law. *Greenspoint Dodge of Hous.*, 297 S.W.3d at 252; *Coker*, 650 S.W.2d at 393. A contract is ambiguous when its meaning is uncertain and doubtful, or it is reasonably susceptible to more than one meaning. *Coker*, 650 S.W.2d at 393. We review an unambiguous contract de novo. *Greenspoint Dodge of Hous.*, 297 S.W.3d at 252.

To prevail on a breach of contract claim, a plaintiff must prove (1) the existence of a valid contract, (2) the plaintiff's performance, (3) the defendant's breach, and (4) the plaintiff's damages resulting from the breach. *See S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018) (citing *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018)).

The relevant terms of the Amended Contract were unambiguous. Paragraph 4.2 provides:

4.2 <u>Seller's Conditions to Closing</u>. Without limiting any of the rights of Seller elsewhere provided for in this Contract, Seller's obligation to close with respect to the conveyance of the Property under this Contract shall be subject to and conditioned upon the fulfillment of each and all of the following conditions precedent:

. . . .

4.2.3 The Assumption Approval has been obtained.

"Assumption Approval" is defined under the Amended Contract as "HUD Approval and the Loan Assumption Approval." "Loan Assumption Approval" was satisfied only "when the [AHFC] and any servicer have all executed and delivered written approval [for Eureka] to consummate the assumption of the Loan." The "Assumption Approval Period" is defined as "the expiration of the 100th day after the Effective Date."

The Amended Contract unambiguously provided Marshall with the right to terminate under Paragraph 4.3:

4.3 <u>Failure or Waiver of Conditions Precedent</u>. In the event any of the conditions set forth in <u>Paragraphs 4.1</u> or <u>4.2</u> are not fulfilled or waived, the party benefitted by such conditions may, by written notice to the other party, terminate this Contract, whereupon all rights and obligations hereunder of each party shall terminate except those that expressly survive termination.

Marshall was the party benefitted by Eureka's Assumption Approval obligations and was permitted under Paragraph 4.3 to terminate if Eureka did not timely obtain Assumption Approval. There is no genuine issue of material fact that Marshall notified Eureka that Marshall was terminating the Amended Contract effective April 9, 2018, if Eureka did not obtain (1) Assumption Approval by that date or (2) extend the Amended Contract pursuant to its terms. Eureka acknowledged on April 9, 2018, that Eureka had not received Assumption Approval, and Eureka

12

did not extend the Amended Contract pursuant to its terms. Because Eureka did not obtain Assumption Approval, Marshall exercised its right to terminate under Paragraph 4.3.

Eureka argues that the Amended Contract imposed no deadline at all on Eureka receiving Assumption Approval. Eureka's interpretation of the Amended Contract results in a contract for the sale of real property with no termination date. Eureka's interpretation ignores the contract's language and renders numerous provisions of the Amended Contract meaningless, including the Closing Date, "Time is of the Essence" and Assumption Approval provisions, as well as the provision providing Marshall the right to terminate based on Eureka's failure to obtain conditions precedent under Section 4.3. *See Great Am. Ins. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017) (explaining that reviewing court strives to give meaning to all contract language so that no provision is rendered meaningless).

In the alternative, Eureka contends that even if the Amended Contract was set to terminate on April 9, 2018, the parties orally agreed to extend this date and waive Assumption Approval. The terms of the Amended Contract prohibited such an oral agreement, providing that the "Contract may be amended or supplemented only by an instrument in writing and executed by the parties." Moreover, under the statute of frauds, a contract for the sale of real estate must be in writing and signed by the party charged with compliance with its terms. Tex. Bus. & Com. Code § 26.01(b)(4). Generally, if a contract falls within the statute of frauds, a party cannot enforce any subsequent oral modification to the contract. *See Dracopoulas v. Rachal*, 411 S.W.2d 719, 721 (Tex. 1967). To support its argument, Eureka cites a narrow exception to the statute of frauds that permits an oral agreement to extend the time of performance of a contract; however, this exception applies only when the oral agreement is made before the written contract expires. *See id.* at 722. In addition, where the oral modification to the termination date changes other contractual rights

13

and duties, the modification materially affects the written contract and must be in writing. *See id.* The record does not contain evidence to raise a fact issue that before the Amended Contract expired on April 9, 2018, Eureka and Marshall orally agreed to extend the time of performance of the Amended Contract. Even if the parties had so agreed, waiving Assumption Approval would materially affect the written contract and thus must have been in writing. *See id.*

We conclude that the trial court did not err in granting summary judgment as to Eureka's breach-of-contract claim and we overrule Eureka's first issue.

## II.    *Promissory Estoppel*

Eureka next argues that a fact issue exists as to whether Marshall promised on May 2, 2018, to close the real-estate transaction on May 10, 2018. Eureka alleges that if the Amended Contract terminated on April 9, 2018, then Marshall's promise to close the real-estate transaction on May 10, 2018, constitutes an independent promise that Marshall is estopped from avoiding. Marshall responds that Eureka's promissory-estoppel claim was not properly before the trial court because Eureka first asserted the claim in the fifth amended petition, which was improperly filed without leave of court after the summary-judgment hearing and after the trial court entered the August 2019 order awarding Marshall a summary judgment on all of Eureka's claims in the fourth amended petition. Marshall also contends that even if the trial court considered Eureka's fifth amended petition, the promissory-estoppel claim is barred by the statute of frauds.

### *The Trial Court Considered Eureka's Fifth Amended Petition*

We must first consider whether Eureka timely amended its petition to assert the promissory-estoppel claim. Marshall moved to strike the fifth amended petition because Eureka filed the petition (1) after the summary-judgment hearing, (2) after the trial court entered an order

14

that awarded Marshall summary judgment on Eureka's claims in the fourth amended petition and dismissed the claims with prejudice, and (3) after the trial court denied Eureka leave to supplement the summary-judgment record. Marshall argued that Eureka violated Rules 63 and 166a of the Texas Rules of Civil Procedure by late-filing the fifth amended petition without leave of court, particularly because the fifth amended petition pled new claims arising from the same nucleus of operative facts as the prior petition. Eureka responded that it had a right to file the fifth amended petition without leave of court because Marshall's counterclaims were pending.

A party may amend its pleading without leave of the trial court up to seven days before the summary-judgment hearing. *See Goswami v. Metropolitan Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988) (per curiam). If a party files an amended pleading after this deadline but before the summary-judgment hearing, leave of court is presumed if the summary judgment recites that the trial court examined the pleadings, there is no indication that the amended pleading was not considered, and the opposing party does not show surprise. *See id.* at 490; *Cont'l Airlines, Inc. v. Kiefer*, 920 S.W.2d 274, 276 (Tex. 1996). If a party files an amended pleading after the summary-judgment hearing but before the judgment is signed, there is no presumption that leave was granted and the record must affirmatively demonstrate that the trial court granted leave. *See* Tex. R. Civ. P. 166a(c); *Kiefer*, 920 S.W.2d at 276 (explaining appellate court presumes leave was granted when summary judgment states that all pleadings were considered, record does not indicate that amended pleading was not considered, and opposing party does not show surprise). In the summary judgment context, "[c]ourts of appeals considering whether a trial court granted leave commonly—and correctly—examine the record for an 'affirmative indication that the trial court permitted the late filing.'" *B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 259 (Tex. 2020).

In this case, the record does not contain an order granting Eureka leave to file the fifth amended petition. We presume, however, that the trial court considered Eureka's fifth amended petition because the trial court held a hearing on Marshall's motion concerning the petition and the trial court's summary-judgment order recited that the court considered "the competent summary judgment evidence, the pleadings on file, and the relevant law."[7] *See Mosaic Baybrook One, L.P. v. Cessor*, 668 S.W.3d 611, 624 (Tex. 2023) (instructing that leave to amend pleading should be presumed in certain circumstances); *Kiefer*, 920 S.W.2d at 276 (presuming that leave was granted for late-filed amended petition because judgment recited that "after examining the pleadings," trial court concluded that Continental was entitled to summary judgment).

We also conclude that the trial court appropriately disposed of the promissory-estoppel claim on summary judgment because the claim fails as a matter of law. In the fifth amended petition, Eureka acknowledged that AHFC refused to allow Eureka to assume the AHFC loan. Eureka alleged that it rejected Marshall's demand to either close the Amended Contract by April 8, 2018, or be in default.[8] Eureka claimed that in May 2018, Marshall promised to waive the Assumption Approval condition and close the transaction with Eureka paying off the AHFC loan.

---

[7] The trial court's "Order on Defendants' Motion to Enter Final Judgment or Alternative Motion for Summary Judgment and Motion to Dismiss Pursuant to the [TCPA]" (formatting altered) did not specifically reference Marshall's motion to strike Eureka's fifth amended petition. The order recited that the trial court heard "Defendants' Motion to Enter Final Judgment or Alternative Motion for Summary Judgment and Defendants' Motion to Dismiss Pursuant to the Texas Citizens' Participation Act" on January 20, 2021; however, Marshall argued its motion to strike during the January 2021 hearing.

[8] Marshall informed Eureka on April 6, 2018, that, pursuant to the terms of the Amended Contract, the Closing Date should occur on Sunday, April 8, 2018, which would extend to Monday, April 9, 2018.

On appeal, Eureka argues that, if the Amended Contract terminated before May 2, 2018, then Marshall promised on May 2 to close the transaction on May 10, 2018, and Marshall is estopped from avoiding that May 2 promise. Eureka contends that the substance of the purported oral agreement made on May 2, 2018, was to close the transaction on the terms stated in the Amended Contract, notwithstanding the Amended Contract's expiration, with Eureka assuming the AHFC Loan by paying it in full.

Promissory estoppel requires evidence of: (1) a promise; (2) foreseeability of reliance; (3) actual, substantial, and reasonable reliance by the promisee to his detriment; and (4) that failing to enforce the promise would result in an injustice. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 133 (Tex. 2005) (orig. proceeding). Eureka's promissory-estoppel claim fails as a matter of law because it is based upon an allegation that Eureka and Marshall had an oral agreement to convey property, which was unenforceable for the lack of a required written agreement. *See Reiland v. Patrick Thomas Props., Inc.*, 213 S.W.3d 431, 437 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (concluding that statute of conveyances and statute of frauds require conveyances and contracts for sale of real property to be in writing and signed by conveyor) (citing Tex. Prop. Code § 5.021; Tex. Bus. & Com. Code § 26.01(b)(4))).

Even if the Amended Contract had not terminated, the "Entirety and Amendments" paragraph of the Amended Contract prevented the parties from orally changing the closing date to May 2018 or altering the terms of Assumption Approval. Moreover, for the purposes of this promissory-estoppel claim, Eureka has asserted that purported oral promises contradicted the terms of the Amended Contract. However, Eureka has not shown it was reasonable and justified to rely on Marshall's purported promises—especially considering that Eureka had already filed a

17

lawsuit against Marshall alleging breach of contract concerning the sale.[9] *See Comiskey v. FH Partners, LLC*, 373 S.W.3d 620, 635 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (explaining that promisee's reliance must be reasonable and justifiable reliance depends on sophistication of parties); *Ortiz v. Collins*, 203 S.W.3d 414, 424 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (concluding promissory estoppel claim failed because, given parties' adversarial relationship, plaintiff's reliance on defendant's alleged promise to draft contract was unjustified).

We conclude that the trial court did not err in granting summary judgment as to Eureka's promissory-estoppel claim, and we overrule Eureka's second issue.

### III. *Marshall's Counterclaim*

In its third issue, Eureka argues that the trial court erroneously denied Eureka's TCPA motion seeking the dismissal of Marshall's breach-of-contract counterclaim.[10] Specifically, Eureka argues that (1) the TCPA broadly applies to all counterclaims that are based on, relate to, or respond to a plaintiff's pleading or lawsuit and (2) Marshall did not present a prima facie case that Eureka breached the Amended Contract because Eureka had no contractual obligation to

---

[9] Eureka cites *Haase v. Glazner* for the proposition that Eureka can still recover reliance damages even if the statute of frauds barred its claim for specific performance of the oral promise. *See* 62 S.W.3d 795, 798 (Tex. 2001) (holding benefit-of-the-bargain damages not available for fraud that induces nonbinding contract but can recover out-of-pocket damages). Because Eureka does not allege that Marshall committed fraud, this argument is without merit.

[10] Marshall does not dispute Eureka's contention that the analysis of its TCPA motion to dismiss Marshall's counterclaim is governed by the TCPA as it existed before September 2019. *See* Act of May 17, 2019, 86th Leg. R.S., ch. 378 §§ 11, 12, 2019 Tex. Gen. Laws 684, 687 (stating that amendments to TCPA apply "only to an action filed on or after" September 1, 2019). The parties also do not dispute that Eureka can raise this issue on appeal. *See Hale v. Rising S Co.*, No. 05-21-001103-CV, 2023 WL 3714751, at *3 (Tex. App.—Dallas May 30, 2023, pet. denied) (mem. op.) (concluding that appeal of TCPA issue after final judgment presented different issue than prior denial of appellate jurisdiction due to untimely interlocutory appeal of TCPA order and declining to apply law of the case).

obtain Assumption Approval. Marshall responds that it presented a prima facie case that Eureka breached the Amended Contract by failing to obtain Assumption Approval, failing to close the sale of the property, and failing to deliver $125,000.00 in earnest money to Marshall.

We review de novo a trial court's ruling on a TCPA motion to dismiss. *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019). The TCPA provides a three-step process for the dismissal of a legal action. *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 691 (Tex. 2018); *see also* Tex. Civ. Prac. & Rem. Code § 27.005(b)–(d). First, the movant must show by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the movant's exercise of the right of free speech, right to petition, or right of association. Tex. Civ. Prac. & Rem. Code §§ 27.003(a), 005(b). If the movant meets that burden, the burden shifts to the non-movant to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *In re Lipsky*, 460 S.W.3d 579, 587 (Tex. 2015) (orig. proceeding) (quoting Tex. Civ. Prac. & Rem. Code § 27.005(c)). Finally, if the TCPA applies and the nonmovant satisfies its burden of presenting a prima facie case, the burden shifts back to the movant to establish each essential element of any valid defense by a preponderance of the evidence.[11] *See* Tex. Civ. Prac. & Rem. Code § 27.005(d); *Youngkin v. Hines*, 546 S.W.3d 675, 679–80 (Tex. 2018). In deciding whether to dismiss a legal action under the TCPA, a court shall consider the pleadings and evidence that a court could consider in connection with a summary judgment motion, as well as supporting or opposing affidavits stating the facts on which the claims or defenses are based. Tex. Civ. Prac. & Rem. Code 27.006(a); *see USA Lending Grp. v. Winstead*

---

[11] We need not address the third step because Eureka does not assert an affirmative defense or otherwise attempt to meet its burden to prove each essential element of any valid defense by a preponderance of the evidence. *See* Tex. Civ. Prac. & Rem. Code § 27.005(d); *Youngkin v. Hines*, 546 S.W.3d 675, 679–80 (Tex. 2018).

*PC*, 669 S.W.3d 195, 200 (Tex. 2023) (noting that Act does not contemplate extensive discovery). Although the trial court may consider pleadings as evidence under the TCPA, the Act requires more than mere notice pleading. *See RigUp, Inc. v. Sierra Hamilton, LLC*, 613 S.W.3d 177, 189–90 (Tex. App.—Austin 2020, no pet.) (citing *In re Lipsky*, 460 S.W.3d at 590–91).

### *Marshall's Prima Facie Case*

Assuming without deciding that the TCPA applies to Marshall's counterclaim, we nevertheless conclude that Marshall established by clear and specific evidence a prima facie case for each essential element of its counterclaim. *See* Tex. R. App. P. 47.1; *In re Lipsky*, 460 S.W.3d at 587. "Evidence is 'clear and specific' if it provides enough detail to show the factual basis for the claim." *Winstead PC*, 669 S.W.3d at 200 (instructing that such evidence need not be "conclusive, uncontroverted, or found credible"). A prima facie case "is not a high hurdle[,]" but is "that minimum quantity of evidence necessary to rationally infer that an allegation is true." *Id.* at 198; *In re Lipsky*, 460 S.W.3d at 590 (explaining that prima facie case refers to evidence sufficient to establish fact if it is not rebutted or contradicted). When we conduct our review, we view the pleadings and evidence in the light most favorable to the nonmovant. *See RigUp*, 613 S.W.3d at 182; *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied); *Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 603 (Tex. App.—San Antonio 2018, pet. denied).

Marshall asserted that Eureka breached the terms of the Amended Contract by failing to obtain Assumption Approval, failing to deliver $125,000.00 to Marshall to extend the Amended Contract pursuant to its terms, and failing to timely close the sale of the property. To establish the first element the breach-of-contract claim—formation of a contract—Marshall pled

with specific detail to show the factual basis for this element of its claim that Marshall and Eureka entered into the valid and enforceable Amended Contract on November 28, 2017. *See RigUp*, 613 S.W.3d at 189–90 (instructing that a trial court may consider pleadings as evidence if a plaintiff provides more than notice pleading); *S&S Emergency Training Sols.*, 564 S.W.3d at 847. As evidence to support this element, Marshall offered a copy of the Amended Contract as an exhibit to its amended counterclaim. Eureka acknowledged in its petition that the parties entered into the Amended Contract, although Eureka alleged that Marshall subsequently breached the agreement.

To establish the performance element of a breach-of-contract contract claim, Marshall pled with specific detail to show the factual basis of its claim that it fully performed under the terms of the Amended Contract. *See RigUp*, 613 S.W.3d at 189–90; *S&S Emergency Training Sols.*, 564 S.W.3d at 847. As evidence to support this element, Marshall offered the April 6, 2018 notification that it sent to Eureka stating that Marshall had not received proof of Assumption Approval or a closing date, but that Marshall looked forward to hearing from Eureka "so that the sale may close timely." In the First Issue, we addressed Eureka's allegation that Marshall did not perform under the terms of the Amended Contract and concluded that Marshall was entitled to summary judgment on Eureka's breach-of-contract claim.

To establish the breach element of the claim, Marshall pled with specific detail to show the factual basis of its claim that Eureka breached the Amended Contract by failing to "timely obtain Assumption Approval, fail[ing] to deliver $125,000[.00] in earnest money in order to extend the Closing Date," and failing to timely close the sale of the property. *See RigUp*, 613 S.W.3d at 189–90; *S&S Emergency Training Sols.*, 564 S.W.3d at 847. Marshall offered the Amended Contract as evidence to support this element. Pursuant to the terms of the Amended Contract,

21

Eureka agreed to purchase the property with a closing date to occur no later than the latest of: (1) thirty days after Eureka gained Assumption Approval; (2) thirty days after receipt of the amendments by Caritas waiving its interest in the property; or (3) one hundred and twenty days after the Effective Date of the Amended Contract. Pursuant to Paragraph 2.10.5 of the Amended Contract, Eureka was obligated to obtain Assumption Approval within one hundred days of the Effective Date of the Amended Contract. Marshall offered additional evidence that Eureka acknowledged that AHFC refused Eureka loan assumption. Marshall also offered the notification that it sent to Eureka on April 6, 2018, that showed that Eureka failed to obtain Assumption Approval. The notification states that Eureka failed to comply with the terms of the Amended Contract and the agreement would expire on April 9, 2018. Although Eureka could extend the terms of the Amended Contract for an additional twenty days only upon written notice and the release of earnest money, the record does not reflect that Eureka extended the deadline.[12]

To establish the injury element of the claim, Marshall pled with specific detail to show the factual basis of its claim that it was injured because it lost the benefit of its bargain to sell the Property and incurred additional finance and transactional costs. *See RigUp*, 613 S.W.3d at 189–90; *S&S Emergency Training Sols.*, 564 S.W.3d at 847. Marshall also pled that, after Eureka's breach, Marshall had to refinance its principal loan on the Property on less favorable terms. *See Winstead PC*, 669 S.W.3d at 202 (providing that under TCPA, evidence must be

_____

[12] Eureka argues on appeal that its failure to obtain Assumption Approval was not a breach but a condition precedent, and that Eureka had no obligation under the terms of Amended Contract to obtain Assumption Approval. Because Marshall established by clear and specific evidence a prima facie case that Eureka breached the Amended Contract for the additional reasons of failing to close the transaction by the latest agreed upon closing date and failing to deliver $125,000.00 in earnest money to Marshall to extend the Amended Contract according to its terms, we need not address Eureka's argument. *See* Tex. R. App. P. 47.1.

22

sufficient to allow rational inference that some damages naturally flowed from movant's conduct); *Elliot*, 564 S.W.3d at 847 (instructing that direct evidence of damages is not required). As evidence to support this element, Marshall offered the Amended Contract that provided that, if Eureka defaulted in its obligation to purchase the property, Marshall "shall have the right to have the Escrow Agent deliver the earnest money to [Marshall] as liquidated damages to recompense [Marshall] for time spent, labor and services performed, and the loss of its bargain." (formatting altered). At this stage, Marshall's counterclaim survives if the evidence "is legally sufficient to establish a claim as factually true if it is not countered." *Winstead PC*, 669 S.W.3d at 200 (citing *Elliott*, 564 S.W.3d at 847). We conclude, for these purposes, that Marshall offered clear and specific evidence supporting a prima facie breach of contract claim. *See id.* (instructing that "prima facie evidence is taken at face value").

The motion to dismiss stage is a "clearing of an initial hurdle" and not a battle of evidence. *See id.* at 205 (explaining motion to dismiss does not select for plaintiffs certain to succeed; it screens out plaintiffs certain to fail). Because Marshall established by clear and specific evidence a prima facie case for each essential element of its claim, we conclude that the trial court did not err in denying Eureka's TCPA motion. *See In re Lipsky*, 460 S.W.3d at 589 ("That the [Act] should create a greater obstacle for the plaintiff to get into the courthouse than to win its case seems nonsensical."). We thus overrule Eureka's third issue.

## IV.   *Award of Attorneys' Fees*

### *Fee Award to Marshall*

Eureka argues that the trial court's award of attorney fees to Marshall was erroneous because Marshall did not establish that the rates on the fee award were reasonable and because the

23

award compensated for work that was not recoverable.[13]  Marshall responds that it produced

sufficient proof of the reasonableness and necessity of the fees.

The Amended Contract's fee-shifting provision provided:

> <u>Attorneys' Fees.</u>  Should either party employ attorneys to enforce any of the provisions hereof, the party against whom any final judgment is entered agrees to pay the prevailing party all reasonable costs, charges, and expenses, including attorneys' fees, expended or incurred in connection therewith.

After conducting a hearing, the trial court awarded Marshall $488,302.16 "as reasonable costs,

charges, and expenses, including attorneys' fees, expended and incurred as the prevailing party in

connection with this action."

We review an award of attorneys' fees for an abuse of discretion.  *See Sullivan*

*v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016).  "It is an abuse of discretion for a trial court to rule

arbitrarily, unreasonably, or without guiding legal principles, or to rule without supporting

evidence."  *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) (internal citations omitted).

However, a trial court does not abuse its discretion if "some evidence reasonably supports the trial

court's ruling."  *Henry v. Cox,* 520 S.W.3d 28, 34 (Tex. 2017).

In determining the reasonableness and necessity of attorneys' fees in a fee-shifting

situation, the factfinder first "determine[s] the reasonable hours spent by counsel in the case and a

---

[13] Eureka also complains on appeal that the fee award should be reversed because Marshall did not satisfy the Amended Contract's "expended or incurred" requirement.  Eureka, however, did not object to the fee award in the trial court on this basis.  During the fee hearing, Marshall's expert witness testified that Marshall incurred or expended a large amount of fees in connection with defending against Eureka's claims.  Eureka also acknowledged in a pleading that "Marshall incurred the attorney's fees defending against the legal action."  Eureka thus did not preserve this claim of error for appellate review.  *See In re D.Z.*, 583 S.W.3d 284, 291 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (although appellant raised several objections to attorney's fees at trial, he failed to preserve new objection raised on appeal); Tex. R. App. P. 33.1(a).

reasonable hourly rate for such work" and "multiplies the number of such hours by the applicable rate, the product of which is the base fee or lodestar." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 494 (Tex. 2019) (citing *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012)). Sufficient evidence "includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* at 498. The base lodestar calculation, when supported by sufficient evidence, is presumed to "reflect[] the reasonable and necessary attorneys' fees that can be shifted to the non-prevailing party." *Id.* at 499.

Although Eureka argues that Marshall did not offer evidence of any of the timekeepers' hourly rates, the record reflects that Marshall submitted itemized invoices that included descriptions reflecting (1) the services performed, (2) who performed each service, (3) when each service was performed, (4) the amount of time performed on each service, and (5) the total amount billed for each service. *See id.* at 502 (instructing that billing records are not required to prove that requested fees are reasonable and necessary but they are strongly encouraged). Marshall also submitted a document listing the rates charged by its counsel. In addition, Eureka submitted a transcript of the deposition testimony of Marshall's attorneys'-fees expert, Dillon Ferguson, who testified to the reasonableness of the rates of the billing attorneys. Eureka argues that Ferguson offered conclusory testimony that undisclosed rates charged by unidentified timekeepers was reasonable. However, Ferguson's deposition testimony discussed the years of experience and corresponding billing rates of specific attorneys for whose services Marshall sought recovery.

25

Moreover, during the fees hearing, Ferguson testified to the reasonableness of the hourly rate of individual attorneys and the reasonableness and necessity of the number of hours billed. Ferguson testified that he has been practicing law since 1973, he has routinely practiced oil-and-gas and real-estate law in Travis County, and he regularly prepared legal bills for his own clients. Ferguson offered expert testimony that the fees sought by Marshall were reasonable and necessary based upon his review of the invoices prepared in this case and other cases and by comparing the fees charged by national and international law firms that have offices in Austin, Texas. Ferguson made his determination "us[ing] the method that is set out in the *Arthur Andersen* and *[El] Apple* cases and the *Rohrmoos* recent decision by the Texas Supreme Court." Ferguson established a "a reasonable fee for each of the [attorneys] involved [a]n the activity," "review[ed] that [attorney's] activity in the case and the time necessary to accomplish the activity," and determined whether "the activity and the [attorney's] reasonable rate multiplied together yielded" "a reasonable and necessary fee for the activity." He analyzed only the records of timekeepers that he could identify, and he excluded the records of any timekeeper that he could not identify. Ferguson considered this lawsuit a "procedural morass" with "various moves by the plaintiff and defendant" that were "sophisticated," "lengthy," and "complex." "The time and labor required was extensive," and the lawyering involved a high level of skill.[14]

Eureka also argues that the trial court awarded fees to Marshall for work not recoverable under the terms of the Amended Contract. Eureka contends that fees Marshall incurred to defend itself against Eureka's tort claims and fees incurred in drafting pleadings were

---

[14] Eureka's attorneys'-fee expert, Kenneth Chaiken, testified that he did not find the billing rates of Marshall's attorneys reasonable.

26

not recoverable under the terms of the Amended Contract.[15]  The fee-shifting language of the Amended Contract permits the prevailing party to recover "all reasonable . . . attorneys' fees expended or incurred in connection therewith."  *See James Constr. Grp. v. Westlake Chem. Corp.*, 650 S.W.3d 392, 403 (Tex. 2022) ("Texas courts regularly enforce unambiguous contract language agreed to by sophisticated parties in arms-length transactions"); *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019) (explaining that isolating words in contract distorts meaning).  The tort and fraud claims that Eureka asserted against Marshall relied on the Amended Contract and sought to enforce the sale of the property.  Consequently, we detect no error in the trial court's conclusion that the attorneys' fees that Marshall incurred when Eureka sued Marshall were expended or incurred in connection with defending against the tort claims, which were based on the same alleged conduct as the breach-of-contract claim.

Considering the record and applying the factors set forth in *Rohrmoos Venture*, *see* 578 S.W.3d at 494, we conclude that the trial court did not abuse its discretion in its award of fees. *See Smith v. Patrick W.Y. Tam Tr.*, 296 S.W.3d 545, 547 (Tex. 2009) (instructing that reasonableness of attorneys' fees is ordinarily left to factfinder, and reviewing court may not substitute its judgment for factfinder's).

### *Fee Award to the Counsel Defendants*

Eureka argues that the fee award to the Counsel Defendants was an abuse of discretion because the TCPA was not applicable to Eureka's negligent misrepresentation claim and the fee award was unreasonable.  Eureka argues that counsel's communications with Eureka

---

[15]  Eureka does not appeal the trial court's dismissal of its fraud, tortious interference, business disparagement, and negligent misrepresentation claims.

about the real estate transaction did not pertain to a judicial proceeding and there was no lawsuit pending when the communications occurred. Marshall responds that the Counsel Defendants were entitled to recover reasonable attorneys' fees because they successfully moved under the TCPA to dismiss claims that Eureka asserted in connection with their representation of Marshall.

The trial court awarded Defendants $32,621.00 as reasonable costs and attorneys' fees as successful movants under the TCPA. *See* Tex. Civ. Prac. & Rem. Code § 27.009(a)(1). A "reasonable" attorneys' fee is "not excessive or extreme, but rather moderate or fair." *Sullivan,* 488 S.W.3d at 299. The Counsel Defendants had the burden to demonstrate by a preponderance of the evidence that the "legal action"—Eureka's negligent misrepresentation claim—was based on or in response to their exercise of the right of free speech, the right to petition, or right of association.[16] Tex. Civ. Prac. & Rem. Code § 27.005(b)(1)(B). The term "legal action" includes "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim, or any other judicial pleading or filing that requests declaratory or equitable relief" but does not include "a procedural action taken or motion made in an action that does not amend or add a claim for legal, equitable, or declaratory relief." *Id.* § 27.001(6). The right to petition is defined as, among other things, a "communication in or pertaining to . . . a judicial proceeding." *Id*.

The clerk's record makes clear that Eureka's claims against the Counsel Defendants, originally filed in 2019, are based on allegations that the Counsel Defendant Low communicated that Marshall would close the Amended Contract or would close the Amended Contract without Assumption Approval. As alleged, those communications would have occurred while Eureka's lawsuit was pending in Travis County and while the Counsel Defendants were

---

[16] The parties agree that the version of the TCPA effective as of 2019 applies to the Counsel Defendants' TCPA motion.

28

representing Marshall. Moreover, evidence in the record makes clear that those alleged communications were made in connection with the parties' ill-fated attempts to avoid further litigation during the parties' second lawsuit relating to the Settlement Agreement and/or the Amended Contract. Accordingly, those alleged communications "pertain to" the then-pending judicial proceeding involving the parties. We thus conclude that the Counsel Defendants carried their burden to show that the TCPA applied to their communications with Eureka. *See* Tex. Civ. Prac. & Rem. Code § 27.003(a).

Eureka contends that the trial court's fee award of $32,621.00 should be reversed because the Counsel Defendants did not become personally liable for fees related to the TCPA motion. A "law firm can be awarded fees for representation by its own attorneys." *Rohrmoos Venture*, 578 S.W.3d at 488 (citing *Campbell, Athey & Zukowski v. Thomasson*, 863 F.2d 398, 400 (5th Cir. 1989) (explaining that law firm is entitled to compensation for time which representing attorney could have spent on other matters)). Finally, Eureka asserts the fee award to the Counsel Defendants should be reversed because the rates were unreasonable, appearing to rely on its prior argument regarding the rates awarded in Marshall's fee award. As discussed *supra,* considering the relevant factors, we conclude that the trial court did not abuse its discretion in its award of attorneys' fees. *See Smith*, 296 S.W.3d 547.

### *Failure to Award Eureka Attorneys' Fees*

Eureka lastly argues that the trial court erred when it failed to award attorneys' fees to Eureka as the prevailing party on Marshall's breach-of-contract counterclaim that Marshall nonsuited.

The trial court entered an order granting Marshall's motion to enter final judgment or alternative motion for summary judgment and motion to dismiss pursuant to the TCPA, awarding judgment for Marshall on all of Eureka's claims. The trial court further ordered that, in accordance with the court's prior August 2019 order granting summary judgment on all claims against Marshall, and in accordance with the current order dismissing all claims in Eureka's fifth amended petition, Marshall was entitled reasonable costs and attorneys' fees incurred "as the prevailing party." The trial court ordered that the Counsel Defendants were also entitled to a mandatory award of costs and reasonable attorneys' fees as a result of successfully bringing a TCPA motion, and all other relief sought was denied. The trial court stated that the order did not affect Marshall's counterclaims. The record does not demonstrate that the trial court adjudicated Eureka the prevailing party.

Eureka argues that Marshall "effectively" nonsuited its counterclaim with prejudice. However, the record demonstrates that Marshall nonsuited the counterclaim without prejudice in order to create a final judgment. During the attorneys' fees hearing, Marshall's counsel stated:

> . . . more important than the outstanding earnest money is just having this become final, and so I know I could even nonsuit without prejudice in open court. It's not like there's a pending summary judgment or anything.

> So I'm doing that right now to resolve that issue. We're nonsuiting our counterclaims without prejudice. I don't think–you know, I think that resolves all claims, all parties, and–but for the fee award, and we ask you go ahead and enter it. If they want to fight against that on appeal or whatever, at least we'll move on a little bit further. It's just worth it rather than delaying this further.

To support its argument, Eureka relies upon *Epps v. Fowler*, where the Texas Supreme Court held that a defendant is not considered a prevailing party if a plaintiff nonsuits all

of its claims without prejudice unless the trial court determines, on the defendant's motion, that the nonsuit was taken to avoid an unfavorable ruling on the merits. *See* 351 S.W.3d 862, 864–65, 870 (Tex. 2011). In this case, the trial court denied Eureka's *Epps v. Fowler* motion to be considered a prevailing party that argued Marshall's nonsuit was taken to avoid an unfavorable ruling on the merits. Because the record does not demonstrate that Marshall nonsuited its case to avoid an unfavorable ruling on the merits, Eureka has not demonstrated that it was a prevailing party entitled to attorneys' fees. *See id.; Referente v. City View Courtyard, L.P.*, 477 S.W.3d 882, 885–86 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (reviewing trial court's determination under *Epps* for abuse of discretion, deferring to factual findings that are supported by some evidence and reviewing legal questions de novo). We conclude that the trial court did not abuse its discretion in failing to award Eureka attorneys' fees. We therefore overrule Eureka's fourth issue.

## CONCLUSION

Having overruled all of Eureka's issues, we affirm the judgment of the trial court.

_____
Edward Smith, Justice

Before Chief Justice Byrne, Justices Kelly and Smith

Affirmed

Filed: September 29, 2023

31